832 P.2d 225

**STATE of Arizona, Appellant,**

v.

**Patrick Louis CONLIN, Appellee.**

**No. 1 CA–CR 90–1442.**

Court of Appeals of Arizona, Division 1, Department A.

June 4, 1992.

Richard M. Romley, Maricopa County Atty. by Jessica Gifford Funkhouser and Arthur Hazelton, Deputy County Attys., Phoenix, for appellant.

Dean W. Trebesch, Maricopa County Public Defender by Lawrence S. Matthew, Deputy Public Defender, Phoenix, for appellee.

## OPINION

TOCI, Judge.

The state appealed the trial court's order that Patrick Louis Conlin ("defendant") pay his fine and felony assessment to the state's general fund instead of the drug enforcement account as mandated by Ariz. Rev.Stat.Ann. ("A.R.S.") section 13–811(C) (1989). The trial court based its ruling on *Tumey v. Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927), and held that the statutory scheme in A.R.S. section 13–811(C) violated a defendant's due process right to a fair and impartial trial. We disagree. Therefore, we reverse the ruling below and direct that the defendant pay his fine and surcharge to the drug and gang enforcement account as directed by statute.

## ISSUE PRESENTED

Does A.R.S. section 13–811(C), which provides for payment of fines for drug-related offenses to the drug enforcement fund, violate a criminal defendant's due process right to a fair and impartial adjudication of guilt when the sentencing judge's court is funded in part with monies from the drug enforcement fund?

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Pursuant to a plea agreement, the defendant pled guilty to possession of heroin, a class 4 felony. The parties stipulated that the defendant would "pay a $2,000 fine and surcharge to the Arizona Drug Enforcement Fund." When the trial court accept-

ed the defendant's plea and entered the judgment of guilt, the judge ordered the defendant to pay the fine and assessment to the general fund instead of the drug enforcement account:

> You are also to pay a fine of $2,740, including surcharge. I will order that the fine be paid to the general fund, not to the Arizona Drug Enforcement Account, for the reason that I believe the circular system, which would have *me an employee of this fund* as well as my staff and also to freshen its exchequer regularly with the enforcement of fines is an unconstitutional cycle, I believe, Tumey against Ohio decided that many years ago.

(Emphasis added.)

Although the record is scant, we accept the trial judge's statement that his division receives monies from the drug enforcement fund.

The state filed a timely notice of appeal. It argues that A.R.S. section 13–811(C) is mandatory and the trial court erred because it failed to comply with the statute.

## DISCUSSION

In this appeal, we must determine the constitutionality of A.R.S. section 13–811(C). This statute provides: "[A]ll fines collected in any court for offenses included in chapter 34 of this title [controlled substances] ... shall be paid to the drug en-

forcement account of the criminal justice enhancement fund established in § 41–2402." [1]

The state argues that the trial court erred when it did not follow the statutory mandate relating to the fine. The state correctly observes that statutory language using "shall" indicates legislative intent that the act is mandatory, not discretionary. *See Insurance Co. of North America v. Superior Court,* 166 Ariz. 82, 85, 800 P.2d 585, 588 (1990).

The defendant, however, argues that the trial court did not err in refusing to follow the statutory mandate because the statutory scheme is unconstitutional. As the trial court did, the defendant relies upon *Tumey* and cases that followed it to argue that the statute improperly allows a "judge to fund his own paycheck." *See also* U.S. Const. amend. XIV; Ariz. Const. art. 2, § 1.

### A. Tumey and its Progeny

In *Tumey,* the United States Supreme Court held that a statutory scheme providing that a mayor-judge receive direct compensation for each conviction violated due process. The statute set up a "liquor court" where mayors adjudicated prohibition violations and imposed fines. The mayor-judge directly received, in excess of his salary, a portion of the fine as a fee. He received this fee only upon conviction.

---

1. A.R.S. § 41–2402 provides:

A. A drug and gang enforcement account is established within the criminal justice enhancement fund consisting of monies appropriated to the account by the legislature and any other monies available from other sources, public or private, to be used for the purpose of enhancing efforts to deter, investigate, prosecute, adjudicate and punish drug offenders and members of criminal street gangs as defined in § 13–2301.

B. The criminal justice commission shall distribute monies from the drug enforcement account in the following manner:

. . . .

4. Up to thirty per cent [sic] to fund programs and agencies approved by the commission for the purpose of enhancing the ability of the courts to process drug and gang offenses and related criminal cases, either through the appointment of judges pro tempore or the establishment of additional divi-

sions of the courts only for the purposes of this section, enhancing defense and probation services, including treatment, and funding the drug testing program.

. . . .

C. Before any monies are expended from the account, the criminal justice commission shall submit to the joint legislative budget committee a plan of proposed expenditures from the account and the anticipated fiscal and operational impact of those expenditures on all state and local agencies.

D. Any state agency which receives monies allocated from this account shall not include such monies as part of its continuation budget base for the purpose of requesting appropriations for the following fiscal year.

E. All the monies allocated from this account shall be dedicated solely to the purpose of enhancing efforts to deter, investigate, prosecute, adjudicate and punish drug and gang and related criminal offenders. . . .

The Supreme Court held that the statutory scheme violated the criminal defendant's due process rights to a fair and impartial tribunal because the judge had a:

direct pecuniary interest in the outcome, and because of his official motive [as an executive officer charged with raising revenue] to convict and to graduate the fine to help the financial needs of the village....

*Tumey,* 273 U.S. at 535, 47 S.Ct. at 445.

Defendant also cites *Ward v. Village of Monroeville,* 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972), as support for the trial court's ruling. In *Ward,* a mayor-judge fined defendant upon conviction for two traffic offenses. Although the mayor-judge did not receive direct compensation for convictions, revenue from the mayor's court provided a substantial portion of the municipality's treasury. The Court found the "mayor's executive responsibilities for village finances may make him partisan to maintain the high level of contribution from the mayor's court." *Ward,* 409 U.S. at 60, 93 S.Ct. at 83. Following *Tumey,* the Court said this situation provided the "possible temptation to the average man as a judge to forget the burden of proof required to convict the defendant...." *Id.* (quoting *Tumey,* 273 U.S. at 532, 47 S.Ct. at 444). The Court concluded this "necessarily involves a lack of due process of law in the trial of defendants charged with crimes before him." *Id.* (quoting *Tumey,* 273 U.S. at 534, 47 S.Ct. at 445).

Arizona cases have discussed the principles stated in *Tumey.* In *Ison v. Western Vegetable Distrib.,* 48 Ariz. 104, 59 P.2d 649 (1936), the Arizona Supreme Court held that the state Industrial Commission could adjudicate claims and administer the workers' compensation fund without offending due process. The court observed:

[I]t is only when the judge has a direct, personal, substantial, pecuniary interest in reaching a conclusion against a litigant that it is held the due process provision of the Constitution is violated by permitting him to act....

*Ison,* 48 Ariz. at 119, 59 P.2d at 656. The court also observed that industrial commissioners have fixed salaries and no pecuniary interest in deciding whether to grant an award because their salaries are not affected in any manner. *Ison,* 48 Ariz. at 121, 59 P.2d at 657. *See also Jenners v. Industrial Comm'n,* 16 Ariz.App. 81, 491 P.2d 31 (1972).

The state correctly argues that the Supreme Court in *Dugan v. Ohio,* 277 U.S. 61, 48 S.Ct. 439, 72 L.Ed. 784 (1928), upheld the constitutional impartiality of a mayor adjudicating cases in a "liquor court." The mayor in *Dugan* had no executive functions. The city commission fixed the mayor's salary and he received no fees for hearing cases. The court held that *Tumey* did not apply because:

The mayor ... receives a salary which is not dependent on whether he convicts in any case or not. While it is true that his salary is paid out of a fund to which fines accumulated from his court under all laws contribute, it is a general fund, and he receives a salary in any event, whether he convicts or acquits. There is no reason to infer on any showing that failure to convict in any case or cases would deprive him of or affect his fixed compensation....

*Dugan,* 277 U.S. at 65, 48 S.Ct. at 440.

### B. The Statutory Fine

The purpose of the drug enforcement account is to enhance efforts "to deter, investigate, prosecute, adjudicate and punish drug offenders." A.R.S. § 41–2402(A). The plain language of the statute indicates an intent to require those convicted of drug-related offenses to assist in paying a portion of the resources expended as a result of drug-related crimes.

The Criminal Justice Commission ("Commission") may use up to thirty percent of the funds from the drug enforcement account to improve judicial resolution of drug-related criminal matters. A.R.S. § 41–2402(B)(4). The Commission could expend those funds to establish supplemental court divisions to hear drug-related criminal matters and appoint additional *pro tem* judges to address the rising number of drug-related criminal matters. The Com-

mission also may use part of that same percentage to enhance defense and probation services, treatment, and to fund a drug-testing program. Although the statute contains a ceiling on such expenditures, there is no requirement that the Commission expend any minimum sum for judicial purposes.

As we observe above, a due process violation occurs only when the judge has a "direct, personal, substantial, pecuniary interest" in reaching a conclusion against a party. *Ison,* 48 Ariz. at 119, 59 P.2d at 656. For a number of reasons, we conclude that a superior court judge whose court is funded with monies from the drug enforcement fund does not have a "direct, personal, substantial, pecuniary interest" in assessing the fine required by A.R.S. section 13–811(C).

First, judges clearly do not control expenditures from the drug enforcement account. Consequently, unlike the situation in *Tumey* where the mayor-judge received a direct, personal benefit consisting of a portion of the fine as a fee for his services as a judge, a superior court judge receives no direct benefit from the fine. He or she has no assurance that any portion of the fine paid to the drug enforcement fund will be returned to him or her or to the judicial system. Thus, there clearly is no support for the trial judge's conclusion that he is an "employee" of the drug enforcement fund.

Second, the salary of a superior court judge in Arizona is fixed by statute; it is not dependent upon fines levied in criminal cases. *See* A.R.S. §§ 12–128 and 41–101. In contrast, the mayor-judge in *Tumey* had to convict a criminal defendant and levy a fine to be compensated for his services as judge. A superior court judge does not have the discretion under the statutory scheme contained in A.R.S. sections 13–811(C) and 41–2402 to assure or increase the funding of his or her paycheck from fines paid to the drug enforcement fund, as defendant argues.

Third, unlike *Ward* where the mayor-judge had broad executive powers and the revenue from the mayor-judge's court provided a substantial portion of the municipal operating funds, superior court judges in Arizona are not responsible for raising revenue. A superior court judge has judicial, not executive functions. *See* Ariz. Const. art. 3.

This case is more like *Dugan* than *Tumey.* In *Dugan,* the court refused to apply *Tumey* and upheld the impartiality of a mayor-judge adjudicating cases in a "liquor court" where the mayor-judge's salary was fixed, he had limited executive functions and he received no fees for hearing cases.

We also reject the argument that because the Commission may direct a portion of the fine to a particular judge's court or a particular judge may benefit from a workload reduction as a result of the Commission funding additional judges *pro tem* or superior court divisions, there is "a possible temptation to the average [person] as a judge to forget the burden of proof required to convict the defendant." *Tumey,* 273 U.S. at 532, 47 S.Ct. at 444. Superior court judges do not directly benefit from the imposition of a fine paid to the drug enforcement fund. Any amount the Commission may allocate to a particular judge's court from a fine that judge assessed is attenuated. The possibility that the Commission might allocate an indirect, attenuated benefit to his or her court would not tempt the average judge to forget the standard of proof required to convict an accused. We hold there is no due process violation.

## CONCLUSION

The statute requiring judges to assess a mandatory fine does not violate a defendant's constitutional due process right to a fair and impartial trial. Accordingly, we vacate the trial court's ruling that defendant pay his fine to the general fund. We order defendant to pay the fine to the drug enforcement account as A.R.S. section 13–811(C) mandates.

GRANT, P.J., and LANKFORD, J., concur.