904 P.2d 462

**R.L. AUGUSTINE CONSTRUCTION COMPANY, INC., Plaintiff–Appellant,**

v.

**PEORIA UNIFIED SCHOOL DISTRICT NO. 11, a political subdivision of the State of Arizona and its Governing Board, Defendant–Appellee.**

No. 1 CA–CV 93–0107.

Court of Appeals of Arizona, Division 1, Department C.

April 25, 1995.

Review Granted Oct. 24, 1995.

Order Granting Review Amended Nov. 6, 1995.

394

Jennings & Haug by Robert O. Dyer, Carolyn M. Kaluzniacki and Law Offices of David W. Scanlon by David W. Scanlon, Phoenix, for plaintiff-appellant.

Jennings, Strouss & Salmon, P.L.C. by Gary L. Lassen, Robert D. Haws, J. Matthew Powell, Phoenix, for defendant-appellee.

## OPINION

WEISBERG, Judge.

R.L. Augustine Construction Company, Inc. ("Augustine") appeals from the entry of summary judgment in favor of the Peoria Unified School District ("Peoria"). The trial court rejected Augustine's claim that the Arizona Administrative Code ("A.A.C.") sections R7-2-1155 through –1184 (the "Procurement Code") were unconstitutional, and held that it lacked jurisdiction over Augustine's contract claim because Augustine had failed to exhaust its administrative remedies as required by the Administrative Review Act [1] (the "ARA"). Because we hold that the Procurement Code is unconstitutional, and that the ARA does not apply to school districts, we reverse and remand.

## FACTS AND PROCEDURAL HISTORY

Augustine and Peoria entered into a contract under which Augustine agreed to construct an administration center. When the building was not timely completed, Peoria assessed Augustine liquidated damages and architectural fees as a result of the delay. Augustine protested the assessment, claiming that the liquidated damages clause was illegal and that Peoria was responsible for

---

1. Arizona Revised Statutes Annotated ("A.R.S.") §§ 12–901 to 12–914.

any delay. Augustine also suggested alternative methods of resolving the dispute. Peoria's Governing Board (the "Board") informed Augustine that the procedure outlined in the Procurement Code is the exclusive method for resolving claims against school districts. *See* A.A.C. R7–2–1184.

Augustine submitted its claims to a Peoria district representative in accordance with the Procurement Code. After the district representative rejected all of Augustine's claims, Augustine appealed to the Board. The Board then unilaterally selected a hearing officer to conduct a hearing and make non-binding findings, conclusions and recommendations. The hearing officer concluded that Augustine was responsible for part, but not all, of the delay, and recommended that the Board reduce the liquidated damages assessment. He declined, however, to make any recommendations relating to the liquidated damages clause or the request for attorneys' fees because he was "not qualified to rule on [these] legal issues."

The Board then requested that Augustine participate in a hearing before the Board regarding the hearing officer's recommendations. On the day before the scheduled hearing, though, the Board cancelled the hearing and instead made an offer of settlement to Augustine. Augustine protested the cancellation of the hearing, and questioned the constitutionality of the Board's claims resolution procedure. As a result of Augustine's protest, approximately one month later the Board held a hearing, at which Augustine and counsel for Peoria appeared and argued their respective positions. The Board then issued a formal written decision which further reduced the liquidated damages assessment, but did not grant Augustine complete relief. The Board also notified Augustine that it had fifteen days within which to request a rehearing as provided by the Procurement Code. Augustine did not request such a rehearing. Instead, it filed this action in Superior Court.

Peoria moved for summary judgment based upon Augustine's failure to exhaust its administrative remedies under the ARA,

A.R.S. section 12–902(B). In response, Augustine argued that the Procurement Code is unconstitutional, and that the ARA is not applicable to this case. The trial court granted Peoria's motion, finding that the Procurement Code is constitutional and that Augustine had failed to exhaust its administrative remedies as required by the ARA. The trial court therefore concluded that it lacked jurisdiction. Augustine timely appeals.

## DISCUSSION

### Sections R7–2–1155–59 and 1181–84 of the Procurement Code Are Unconstitutional

A.A.C. R7–2–1155 through –1159 and R7–2–1181 through –1184, were adopted by the Board of Education in 1986, pursuant to enabling legislation in A.R.S. section 15–213. 1984 Ariz.Sess.Laws, Ch. 251, § 6. Under these regulations, the initial resolution of contract claims and controversies is by the District Representative,[2] or by the Governing Board. *See* A.A.C. R7–2–1155. Review of the District Representative's decision is made to the Board pursuant to A.A.C. R7–2–1158. The Board then may either act as the hearing officer or appoint a hearing officer. A.A.C. R7–2–1181(A). If the Board appoints a hearing officer, the hearing officer makes a written recommendation with proposed findings of fact and conclusions of law, which the Board may approve as submitted, modify or reject. A.A.C. R7–2–1181(F).

Augustine contends that this administrative procedure is unconstitutional because it permits a party with a direct financial interest in the outcome to resolve a contract dispute. We agree.

■ "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' " *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965)). This principle requires that a hearing be held before an impartial tribunal. *United States v. Superior Court*, 144 Ariz.

---

**2.** The District Representative is defined as the district employee most closely involved in the procurement being protested. A.A.C. R7–2–1001(32).

**396**

265, 280, 697 P.2d 658, 673 (1985); *see also Schweiker v. McClure*, 456 U.S. 188, 195, 102 S.Ct. 1665, 1670, 72 L.Ed.2d 1 (1982) ("[D]ue process demands impartiality on the part of those who function in judicial or quasi-judicial capacities."). Accordingly, no person may be a judge in his or her own case, or have an interest in the outcome, without there being a violation of due process. *In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955).

■ The requirement of an impartial decision-maker applies with equal force to administrative proceedings. *Withrow v. Larkin*, 421 U.S. 35, 46, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712 (1975); *Gibson v. Berryhill*, 411 U.S. 564, 579, 93 S.Ct. 1689, 1698, 36 L.Ed.2d 488 (1973). Thus, officers acting in a judicial or quasi-judicial capacity must be disqualified for bias if they have a direct, personal, or pecuniary interest in the case, or if they have an interest which is an indirect outgrowth of a public official's desire to protect official funds. *Tumey v. Ohio*, 273 U.S. 510, 523, 533–34, 47 S.Ct. 437, 441, 444–45, 71 L.Ed. 749 (1927); *see also Ward v. Village of Monroeville*, 409 U.S. 57, 60, 93 S.Ct. 80, 83, 34 L.Ed.2d 267 (1972).

In *Ward*, the Court found there was a judicial bias in violation of due process even though the judge did not personally have a pecuniary interest in the outcome. There, the proceedings before the judge involved traffic offenses in which the judge, also the mayor, "had responsibilities for revenue production and law enforcement." *Ward*, 409 U.S. at 58, 93 S.Ct. at 82. As the mayor in charge of budgeting, and as the judge impos-

ing fines for traffic offenders which would enrich the city, the judge's financial interest in the outcome amounted to bias against the defendant. *Id.* at 60, 93 S.Ct. at 83. The court stated that the test for determining bias is whether the situation is one

"which would offer a possible temptation to the average man as a judge to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear and true between the State and the accused...." [*Tumey*, 273 U.S. at 532, 47 S.Ct. at 444.] Plainly that 'possible temptation' may also exist when the mayor's executive responsibilities for village finances make him partisan to maintain the high level of contribution from the Mayor's court. This ... is a "situation in which an official perforce occupies two practically and seriously inconsistent positions, one partisan and the other judicial [and] necessarily involves a lack of due process of law...." *Id.* at 534, 47 S.Ct. at 445.

*Id.*

Likewise, here, Augustine does not contend that the individual Board members have a direct, personal, pecuniary interest, but rather that the Board, as a group, has a pecuniary interest in the outcome of the proceedings, both as a party to the contract and based on the Board's official, statutory duties.

■ In Arizona, school district governing boards are directly responsible for operating, maintaining and constructing school buildings, *as well as* raising, budgeting and disbursing the necessary funds.[3] The govern-

---

3. Pursuant to A.R.S. section 15–341(A), governing boards are granted full executive authority for the operation of every aspect of the District:
(A) The governing board shall:
(1) Prescribe and enforce rules for the governance of schools, not inconsistent with law or rules prescribed by the state board of education.
     *     *     *     *     *     *
(5) Manage and control the school property within its district.
     *     *     *     *     *     *
(8) Furnish, repair and insure the school property of the district.
     *     *     *     *     *     *
(9) Construct school buildings on approval by vote of the district electors....

Additionally, A.R.S. section 15–905 gives the governing board the authority and responsibility for preparing and adopting an annual budget, including a budget for "capital outlay." The capital outlay section of the budget includes budgeted expenditures for buildings and improvements. A.R.S. § 15–903(C).

ing board makes all the major decisions regarding the construction of schools, from site acquisition and approval of plans to change orders, liquidated damages and acceptance of the work as complete. Yet, under the Procurement Code, a governing board is empowered to judge the propriety of its own prior decisions. Moreover, as in the instant case, a Board's decision may be an adjudication of the relative rights of the parties to a contract, to which the Board itself is a party. The Board's participation in a dispute as both a litigant and judge results in a situation in which the average person might be unable to "hold the balance nice, clear and true" between the parties. *See Tumey*, 273 U.S. at 532, 47 S.Ct. at 444.

This is not to suggest that either the Peoria Board, or most governing boards in general, do not attempt to judge contract disputes fairly. Notwithstanding, as the Supreme Court noted in *Aetna Life Insurance Co. v. Lavoie*, 475 U.S. 813, 825, 106 S.Ct. 1580, 1587, 89 L.Ed.2d 823 (1986):

> The Due Process Clause "may sometimes bar trial by judges who have no actual bias and who would do their very best to weight the scales of justice equally between contending parties. But to perform its high function in the best way, 'justice must satisfy the appearance of justice.'"

(Citations omitted.)

A good illustration of this inherent conflict is presented here where the Board is allowed to switch hats from being a party to the dispute, to being the adjudicator, and then back to being a litigant. In the instant case, the Procurement Code allowed the Board, even though a party to the contract, to (1) unilaterally appoint the hearing officer who would adjudicate Augustine's claim against the Board; (2) then accept or disregard all or part of the hearing officer's recommendations; and, finally, (3) suspend in midstream its own administrative procedure by ceasing to act as the judge, and revert to being a litigant for the purpose of negotiating a settlement with Augustine. This role-switching offends due process.

We are aware of other circumstances under which courts have upheld administrative adjudicative components, but find they are distinguishable. For instance, in *Ison v. Western Vegetable Distribs*, 48 Ariz. 104, 59 P.2d 649 (1936), a claimant argued that his due process rights were violated because the Industrial Commission, which was charged with making awards in cases where compensation was sought, was also charged with the care and custody of the State Compensation Fund from which awards would be paid. *Id.* at 113, 59 P.2d at 653. The Arizona Supreme Court found no due process violation because the commissioners had neither a personal nor official, pecuniary interest in the outcome of the dispute because 1) the funds for the award were not based upon taxation of citizen's property, but rather were paid from the payrolls of various employers, and 2) the fund was self-supporting. *Id.* at 120, 59 P.2d at 657. Moreover, the Commission was not in an adversarial relationship with claimants, but rather served as a neutral arbitrator between the employee and employer. *Holler v. Industrial Comm'n*, 140 Ariz. 142, 145, 680 P.2d 1203, 1206 (1984). In addition, the Industrial Commission maintained a rigid separation between the administrators who oversaw the fund and the hearing officers in the adjudicative arm.[4]

Similarly, in *Rouse v. Scottsdale Unified Sch. Dist. No. 48*, 156 Ariz. 369, 752 P.2d 22 (App.1987), the school board was not acting as an adversary, but solely as an adjudicator because the issue before it was whether to terminate a teacher's employment, and that question was instituted by the staff at the teacher's high school, not the school board. Next, it was not even alleged that the school board in *Rouse* had a pecuniary interest, but rather that it had a "conflict of interest" because some of its members may have had a personal bias against the teacher being terminated. *Id.* at 371, 752 P.2d at 24. Finally, in *Rouse*, the school board was not judging the reasonableness of its own behaviors, but rather the reasonableness of the teacher's behavior.

---

4. Even that may have seemed so unfair that the legislature ultimately separated the two functions. *See* A.R.S. §§ 23–981, –981.01; *Evertsen v. Industrial Comm'n*, 117 Ariz. 378, 381, 573 P.2d 69, 72 (App.), *approved and adopted,* 117 Ariz. 342, 572 P.2d 804 (1977).

Here, the Board's collective, official pecuniary interest is a necessary outgrowth of its statutory role. Other courts have concluded that this type of institutional pecuniary interest will violate due process. *See, e.g., United Church of the Medical Center v. Medical Center Commission,* 689 F.2d 693, 699 (7th Cir.1982) (hearing provisions were unconstitutional where Commission has a stake in the outcome of the hearing); *E & E Hauling, Inc. v. Pollution Control Bd.,* 116 Ill.App.3d 586, 71 Ill.Dec. 587, 451 N.E.2d 555 (1983) (County board violated standards of adjudicative due process where the hearing body consisted of the same people who comprise the body applying for a permit). It matters not that the administrative agency acts in absolute good faith or that its decision may have been objectively correct. A governmental entity may not adjudicate cases in which it has, by virtue of its official, statutory duties, a pecuniary interest in the outcome.

▪ Notwithstanding, Peoria contends that any constitutional infirmities in the regulations are cured by the contractor's right to appeal its decision to the superior court pursuant to the ARA. We disagree.

First, a right to appeal under the ARA would not cure the constitutional problem because review is not *de novo* and the superior court must affirm unless it finds the Board's decision arbitrary, capricious, illegal or an abuse of discretion. *Webster v. State Bd. of Regents,* 123 Ariz. 363, 365, 599 P.2d 816, 818 (App.1979).

▪ Second, in the instant case, there is no right of review under the ARA since Peoria is a political subdivision of the state, *see Sorenson v. Superior Court,* 31 Ariz. 421, 425-26, 254 P. 230, 231 (1927) (high school district is political subdivision); *McClanahan v. Cochise College,* 25 Ariz.App. 13, 17, 540 P.2d 744, 748 (1975) (community college district is political subdivision), and the ARA is not applicable to political subdivisions. A.R.S. § 12-901(1); *Boyce v. City of Scottsdale,* 157 Ariz. 265, 269, 756 P.2d 934, 938 (App.1988); *McClanahan,* 25 Ariz.App. at 15, 540 P.2d at 746.

Finally, Augustine's due process rights would be violated even with a *de novo* review

in the superior court. *See Gibson,* 411 U.S. at 571-72, 574-75, 93 S.Ct. at 1694-95, 1695-96 (judicial review of biased state administrative proceedings, even if on a *de novo* basis, does not obviate need for injunctive relief); *Ward,* 409 U.S. at 61-62, 93 S.Ct. at 83-84; *United Church,* 689 F.2d at 701 (submission to fatally biased decision-making process is in itself constitutional injury which right of review does not cure). In *Ward,* the court stated that even a *de novo* review on appeal

does not guarantee a fair trial in the [initial proceeding].... Nor, in any event, may the State's trial court procedure be deemed constitutionally acceptable simply because the State eventually offers a defendant an impartial adjudication. Petitioner is entitled to a neutral and detached judge in the first instance.

409 U.S. at 61-62, 93 S.Ct. at 84.

Under the portions of the Procurement Code at issue here, governing boards may adjudicate cases to which they are a party and in which they have an official motive to decide the issue in a biased manner. That procedure violates Augustine's right to due process of law.

### Attorneys' Fees

Both Augustine and Peoria seek an award of attorneys' fees pursuant to A.R.S. section 12-341.01. Since we do not know which party will ultimately prevail in this action, it is premature to award attorneys' fees. Should the trial court award fees at the conclusion of these proceedings, the prevailing party may include any attorneys' fees incurred in this appeal in its request to the trial court.

### CONCLUSION

Because the ARA does not apply to school districts, and because the application of the Procurement Code violates Augustine's due process rights, the trial court erred in granting Peoria summary judgment. This case is therefore reversed and remanded for proceedings consistent with this decision.

EHRLICH, P.J., and VOSS, J., concur.