985 P.2d 633

**Steve PAVLIK, Plaintiff–Appellee,**

v.

**CHINLE UNIFIED SCHOOL DISTRICT NO. 24; Rose Martinez, President of the Governing Board of the Chinle Unified School District No. 24, in her official capacity; Verna Salabya, member of the Governing Board of the Chinle Unified School District No. 24, in her official capacity; Virgil Brown, member of the Governing Board of the Chinle Unified School District No. 24, in his official capacity; and Peggy Scott, member of the Governing Board of the Chinle Unified School District No. 24, in her official capacity, Defendants–Appellants.**

No. 1 CA–CV 98–0203.

Court of Appeals of Arizona,
Division 1, Department D.

March 11, 1999.

Review Denied Sept. 21, 1999.

Mangum, Wall, Stoops & Warden, P.L.L.C. by Stephen K. Smith, Flagstaff, for Defendants–Appellants.

Hobson & Ringler by Patricia L. Carpenter and William R. Hobson, Tempe, for Plaintiff–Appellee.

## OPINION

BERCH, Judge.

¶ 1 Chinle Unified School District Number 24 appeals from a trial court decision reinstating Steve Pavlik, a high school teacher whose employment was terminated by the School District's Governing Board. We reverse the trial court's decision and set aside the order of reinstatement.

### FACTS AND PROCEDURAL HISTORY

¶ 2 Steve Pavlik taught at Chinle High School for twenty years. In the fall of 1995, the superintendent of the Chinle School District learned of allegations that Pavlik had behaved inappropriately toward some female students.

¶ 3 The superintendent immediately placed Pavlik on paid administrative leave and sent him the following memorandum:

SUBJECT: PLACEMENT ON ADMINISTRATIVE LEAVE WITH PAY

Allegations have been made about your conduct as a Teacher that raise serious concern. You are being placed on administrative leave with pay effective immediately. The purpose of the administrative leave is to enable the district to investigate

the complaints against you and to determine what action, if any, is required. You will be notified of the district's conclusions and any proposed disciplinary action when the investigation has been completed pursuant to the procedures set forth in District Policy GCPD (copy attached).

While you are on administrative leave you may attend school functions where members of the public are invited in the same manner and under the same terms and conditions as other members of the public. You may pick up your paychecks (unless you have direct deposit) each pay day at the Payroll office in the district office complex. Other than the above exceptions, you are not to contact students or school personnel other than the High School Principal or be on school property without permission.

If you have any questions regarding this letter or your status while you are on Administrative Leave, you may call Ben Wade, Chinle High School Principal, at. . . .

¶ 4 On December 4, 1995, Pavlik was notified that the subject of his possible dismissal was on the agenda for the Board's December 6, 1995, meeting. Pavlik's attorney requested that the matter be deferred until Pavlik had received formal notice of the charges and had an adequate chance to confer with counsel, file a response, and prepare his defense. The District agreed and gave Pavlik a statement of the charges and continued the Board meeting to December 19, 1995. Pavlik filed a written response to the charges in which he admitted many of the facts alleged, but took issue with their gravity.

¶ 5 At the December 19 meeting, the Board accepted the recommendation to terminate Pavlik's employment and notified Pavlik of this action. Pavlik requested a hearing before the Board. At that hearing, which was held on February 8 and 9, 1996, Pavlik presented thirteen witnesses and several exhibits, and his counsel made arguments on his behalf. After taking the matter under advisement, the Board found, among other things, that Pavlik had engaged in verbal and physical conduct of a sexual na-

ture that created an intimidating or offensive environment for students. The Board sustained the recommendation that Pavlik be terminated.

¶ 6 Pavlik filed a complaint in superior court seeking judicial review of the Board's action. The trial court voided the Board's action, concluding that the Board had a pecuniary interest in the outcome of the decision because if it had not upheld Pavlik's termination, the District would have been liable for Pavlik's witness and attorney fees. The court also concluded that the Board had acted arbitrarily by placing Pavlik on administrative leave before it had furnished him a statement of the charges because failing to give notice of the charges had prejudiced Pavlik's ability to defend himself. The District appealed.

## DISCUSSION

¶ 7 At the time of Pavlik's hearing, Arizona statutes required that the governing board of a school district hear and determine teacher termination disputes.[1] *See* Ariz.Rev.Stat. Ann. ("A.R.S.") § 15–541 (1991). The board must pay the expenses of any hearing and, if it decides that a teacher should not be terminated, it must pay all reasonable witness and attorney fees incurred by the teacher. *See* A.R.S. § 15–542(A) (1991). Pavlik argues that "this significant additional expenditure [for witness and attorney fees] can be avoided by a vote which terminates the teacher." This, he argues, creates "actual bias" on the part of the Board members.

### A. *Proceeding Before the Board*

¶ 8 Pavlik never objected to proceeding before the Board and first raised the bias issue in superior court. Generally, a failure to raise an issue before an administrative tribunal precludes judicial review of that issue unless it is jurisdictional. *See DeGroot v. Arizona Racing Comm'n*, 141 Ariz. 331, 340, 686 P.2d 1301, 1310 (App.1984). An exception to the general rule, however, allows us to review the competence of a board to hear a dispute brought before it. *See Rouse v.*

*Scottsdale Unified Sch. Dist.*, 156 Ariz. 369, 371, 752 P.2d 22, 24 (App.1988) (holding that determining a board's competence to review an administrative hearing is "akin to a jurisdictional question" and thus is reviewable by an appellate court even though not raised before the board).

¶ 9 The District argues that Pavlik's failure to raise his bias challenge before the Board has deprived this court of the facts necessary to resolve the issue. And it is true that the record contains no evidence regarding whether Board members are paid for their services, whether the payment of witness and attorney fees to Pavlik would affect any Board member personally, whether the Board members were aware of the fee-shifting statute, and whether, given the size of the District's budget, the payment of fees would affect the budget or the decision. The District benefits from the silent record, however, because Pavlik bears the burden of showing that he was denied due process. *See McClead v. Pima County*, 174 Ariz. 348, 352, 849 P.2d 1378, 1382 (App.1992) (one challenging the constitutionality of a statute bears the burden of proving it is unconstitutional beyond a reasonable doubt).

### B. *The Board's Alleged Bias*

¶ 10 Pavlik claimed, and the trial court concluded, that the Board members had "a pecuniary interest in the outcome" of the case, and that the potential liability for witness and attorney fees "provide[d] a pecuniary interest in the outcome of the decision which creates an appearance of partiality that violates due process." The trial court held, in effect, that A.R.S. section 15–542, the statute requiring the payment of fees, necessarily gave the Board members a pecuniary interest so substantial as to invalidate its decision to terminate a teacher for misconduct. Since school boards are statutorily charged with the duty to make these personnel decisions, the decision effectively renders unconstitutional part of the statutory scheme for reviewing teacher terminations. We dis-

---

1. The statutes were amended in 1996. Teacher termination hearings now may be conducted by administrative hearing officers rather than school boards. *See* A.R.S. § 15–541 (Supp. 1998).

agree that the potential liability for attorneys' fees created such a direct or substantial interest that it violated Pavlik's constitutional rights.

¶ 11 We begin our analysis by noting that the trial court failed to accord proper weight to two firmly established principles. First, statutes are presumed to be constitutional and unconstitutionality must be demonstrated beyond a reasonable doubt. *See Samaritan Health Sys. v. Superior Court,* 194 Ariz. 284, ¶ 21, 981 P.2d 584, ¶ 21 (App.1998); *Arizona Downs v. Arizona Horsemen's Found.,* 130 Ariz. 550, 554, 637 P.2d 1053, 1057 (1981). Second, adjudicators are presumed to be fair and may be disqualified only upon a showing of actual bias; mere speculation regarding bias will not suffice. *See Withrow v. Larkin,* 421 U.S. 35, 47, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975); *Martin v. Superior Court,* 135 Ariz. 258, 260, 660 P.2d 859, 861 (1983); *Rouse,* 156 Ariz. at 374, 752 P.2d at 27. The party asserting bias bears the burden of rebutting the presumption of fairness and establishing a disqualifying interest. *See State v. Jeffers,* 135 Ariz. 404, 427, 661 P.2d 1105, 1128 (1983); *Wolkenstein v. Reville,* 694 F.2d 35, 42 (2d Cir.1982). Pavlik did not meet these burdens in this case.

¶ 12 The right to a "fair trial in a fair tribunal" is, of course, intrinsic to due process. *United States v. Superior Court,* 144 Ariz. 265, 280, 697 P.2d 658, 673 (1985) (quoting *In re Murchison,* 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955)). Every person is entitled to receive a fair administrative hearing and have a decision rendered by an impartial decisionmaker. *See Rouse,* 156 Ariz. at 371, 752 P.2d at 24 (citing *Goldberg v. Kelly,* 397 U.S. 254, 271, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970)).

¶ 13 Due process is violated if the decisionmaker's situation—in this case, the requirement to pay attorneys' fees—would tempt "the average [Board member] . . . to forget the burden of proof . . . or . . . might

lead him not to hold the balance nice, clear, and true between the state and the accused." *Ward v. Village of Monroeville,* 409 U.S. 57, 60, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972) (quoting *Tumey v. Ohio,* 273 U.S. 510, 532, 47 S.Ct. 437, 71 L.Ed. 749 (1927)).

¶ 14 There are two distinct types of adjudicatory bias: personal bias and institutional bias. *See Tumey,* 273 U.S. at 535, 47 S.Ct. 437; *Alpha Epsilon Phi Tau Chapter Housing Ass'n v. City of Berkeley,* 114 F.3d 840, 843 (9th Cir.1997). A statutory scheme may violate due process if the adjudicator has a direct and personal pecuniary interest in the outcome of its decisions. *See, e.g., Tumey,* 273 U.S. at 523, 47 S.Ct. 437; *Connally v. Georgia,* 429 U.S. 245, 250, 97 S.Ct. 546, 50 L.Ed.2d 444 (1977); *Rouse,* 156 Ariz. at 372, 752 P.2d at 25. Even if the decisionmaker does not have a personal stake, due process may nonetheless be violated if the decisionmaker has sufficiently strong institutional reasons to rule in favor of the board or organization.

¶ 15 In this case, the Board members received nothing of value for finding against Pavlik. Their interest was not personal. Rather, Pavlik alleges that the Board members were motivated to terminate his employment by the institutional interest of saving school district funds.

¶ 16 Pavlik urges that the reasoning in *R.L. Augustine Construction Company, Inc. v. Peoria Unified School District No. 11,* 183 Ariz. 393, 904 P.2d 462 (App.1995), *rev'd on other grounds,* 188 Ariz. 368, 936 P.2d 554 (1997),[2] supports the trial court in finding the appearance of bias in the case now before us. In *Augustine,* this court struck down as violative of due process a statute that allowed the school board to preside over a contract dispute to which the board itself was a party. *See id.* at 398, 904 P.2d at 467. We held that the scheme violated the fundamental rule of due process, that "no person may be a judge in his or her own case." *Id.* at 396, 904 P.2d at 465 (citing *In re Murchison,* 349 U.S. at 136, 75 S.Ct. 623). The school board, as a

**2.** The supreme court vacated the court of appeals decision in *Augustine* on grounds unrelated to the the due process question. *See Augustine,* 188 Ariz. at 370, 936 P.2d at 556. For the purposes of this discussion, we assume that the reasoning of the court of appeals decision on the adjudicatory bias issue remains valid.

party to the dispute, had a direct pecuniary interest in the outcome that offended Augustine's due process rights. The board members did not profit personally, but had a strong official motive to rule in favor of the institution.

¶ 17 That case differs from the one before us because the Board in Pavlik's case was not a party to the action, but was simply sitting as a court to adjudicate charges preferred against him by a school administration. In that respect, Pavlik's case is more like *Rouse*. In *Rouse*, a terminated teacher claimed that the school board could not, consistent with due process, determine whether "good cause" existed for his termination. *See* 156 Ariz. at 370, 752 P.2d at 23. Although the thrust of Rouse's challenge was that combining the prosecutorial and adjudicative functions in one board violated due process, he also claimed that the school board "might have a 'hidden motive' in terminating 'an expensive continuing teacher'" to free district funds by hiring a less expensive teacher, *id.* at 372, 752 P.2d at 25, an argument raising the same suggestion of institutional financial motivation raised here.

¶ 18 In *Rouse*, we rejected the argument as too "generalized and speculative" and noted that no direct benefit would accrue to the board from terminating Mr. Rouse. *Id.* (citing *Hortonville Jt. Sch. Dist. No. 1 v. Hortonville Educ. Ass'n*, 426 U.S. 482, 491, 96 S.Ct. 2308, 49 L.Ed.2d 1 (1976)). The same is true here. Pavlik posits, but does not present any evidence to show, that the payment of his fees is a sufficiently substantial sum to create actual bias on the part of the Board members. Pavlik's claim, like Rouse's, is speculative.

▇▇ ¶ 19 *Rouse* confirms that a party who seeks to establish institutional bias on the basis of pecuniary interest must show that the interest is direct and personal, not generalized and speculative. *See id.* Other Arizona cases affirm that well-established position. *See State v. Conlin*, 171 Ariz. 572,

575, 832 P.2d 225, 228 (App.1992) (holding that any possible benefit to individual superior court judges resulting from fines paid into the drug enforcement fund was too "attenuated" to violate due process); *Ison v. Western Vegetable Distribs.*, 48 Ariz. 104, 121, 59 P.2d 649, 657 (1936) (holding that commissioners had no interest, personal or institutional, in the outcome of a workers' compensation dispute because their salaries did not depend upon the amount in the fund).

▇▇ ¶ 20 These cases demonstrate that the factors most salient in determining whether Board members' interests violate due process include whether the adjudicators have direct responsibility for and control over the entity's funds and whether the adjudicators' interests are remote or direct and substantial. The brief of *Amici Curiae*[3] suggests that the Board's responsibility for school funds is too indirect to give rise to bias because the Board does not have executive authority over the expenditure of the District's money. *Amici* highlight that the District's maintenance and operations budget is set by the legislature, not the Board, and the Board is not responsible for raising funds. We are not persuaded by this analysis. School boards submit budgets and authorize expenditures and are keenly interested in how the money available for running the schools is allocated and spent. Money spent on witness or attorney fees means less money for educational programs, which are the Board's primary concern.

¶ 21 The second salient factor, the substantiality of the interest, is another matter. The Annual Report of the Superintendent of Public Instruction shows that the District's annual maintenance and operation budget for fiscal 1996–1997 exceeded $23,000,000.[4] The record does not show whether the District would be indemnified by insurance for any fees it would be required to pay, and it does not reflect the amount of Pavlik's attorney fees. Pavlik bore the burden of proving the

---

3. Arizona School Boards Association, Inc., and Apache County Attorney Stephen G. Udall.

4. This report, which was attached as an exhibit to the brief of *Amici Curiae*, was not a part of the record below. Pavlik, however, has never objected to its attachment as an appendix to *Amici's* brief, and in his reply to that brief Pavlik uses the figures from the report to further his own argument.

substantiality of the Board's interest, *see Jeffers*, 135 Ariz. at 427, 661 P.2d at 1128, but provided no evidence on the issue. *Amici* suggest, however, without benefit of evidence in the record, that fees in cases of this type rarely exceed $12,000. Even if we double that amount to create a margin of error, the sum is still less than one-tenth of one percent (.1%) of the District's annual maintenance and operations budget.

¶ 22 The dissent points out—and we agree—that however small the amount may be in relation to the District's budget, it nevertheless is money that the District would prefer to spend on educational needs. In other words, the dissent argues for an absolute position: that any time the amount of money at issue is sufficient to serve some other purpose, it is sufficient to support a finding of bias.

¶ 23 Although that point has intuitive appeal, the courts that have analyzed this issue have rejected the absolute approach in favor of a relative approach that requires analysis of the expenditure in light of the entity's entire budget; they do not view the absolute amount to see what else it might purchase. *Compare Ward*, 409 U.S. at 58–59, 93 S.Ct. 80 (finding that fines generating as much as half the town's revenue created a substantial interest) *with Marshall v. Jerrico, Inc.*, 446 U.S. 238, 250–51, 100 S.Ct. 1610, 64 L.Ed.2d 182 (1980) (finding fines generating less than one percent of a federal agency's budget too remote to create a substantial interest);[5] *see also Alpha Epsilon*, 114 F.3d at 846–47 (holding that rent board's assessment of fees representing two to five percent of the board's annual budget does not violate due process); *Wolkenstein*, 694 F.2d at 43 (noting that the great disparity between the one-half of one percent (.5%) at issue there and the thirty-three percent to fifty percent at issue in *Ward* "is not without constitutional significance"). Employing the dissent's analysis might compel a finding of bias in cases in which even an insubstantial interest exists, a result contrary to an established line of cases requiring that the interest be direct and substantial. *See Conlin*, 171 Ariz. at 575, 832 P.2d at 228; *Ison*, 48 Ariz. at 119, 59 P.2d at 656. We do not believe that this result is either sound or compelled.

¶ 24 Fairly interpreted, the evidence adduced in this case failed to show that the Board members had an interest in the outcome of the hearing sufficient, under the judicial standards, to tempt the average Board member to rule in favor of the District regardless of the evidence or to overcome the presumption of honesty and integrity of administrative adjudicators. *See Withrow*, 421 U.S. at 47, 95 S.Ct. 1456. The record is devoid of any evidence to rebut the presumption that the Board members are fair and impartial public servants whose interests lie in providing adequate educational opportunities to the District's school children. Doing so effectively in the long run may depend, in part, upon maintaining good relations with the District's teachers. *See Wolkenstein*, 694 F.2d at 42–43; *cf. Hortonville*, 426 U.S. at 495–96, 96 S.Ct. 2308.

¶ 25 Although any allegation of bias causes concern, the statutory scheme contains safeguards to help ensure that a board's decisions regarding the serious issue of teacher discipline will be fair. Most notably, the administrative hearing statutes do not serve, either in intent or operation, to raise revenue. Their evident purpose is to secure efficient, impartial decisions in teacher discipline cases. Indeed, the statutory scheme contains safeguards to help ensure that a board's decisions will be fair and objective. For example, any dismissal must be supported by good cause, and findings must be made on the record so that they are reviewable. *See* A.R.S. § 15–541. An aggrieved teacher may request judicial review of a board's determination. *See* A.R.S. § 15–543 (1991); *see also Wolkenstein*, 694 F.2d at 44.

---

5. In *Marshall*, the Court upheld a statutory scheme that allowed an administrator to assess fines for child labor violations, even though a portion of the fines reimbursed the administrator's agency for its enforcement efforts. The Court concluded that, because the fines represented less than one percent of the agency's budget, there was no realistic possibility that the administrator's judgment would be distorted by the prospect of institutional gain. *See id.* at 245, 100 S.Ct. 1610. That case, however, focused on the fact that the agency served a prosecutorial function.

Although judicial review does not necessarily cure a due process violation, *see Ward,* 409 U.S. at 61–62, 93 S.Ct. 80, it may cause decisionmakers to exercise greater care in reviewing the facts and rendering a decision. Even the requirement that a board pay fees and costs—the very provision that Pavlik alleges creates bias—helps to ensure that teachers will be able to afford counsel to advise them and represent their interests. *See* A.R.S. § 15–542 (board must pay all expenses of hearing). Contrary to creating bias, the requirement that a board pay fees and costs should ensure that the board exercises care in its deliberations to come to a correct and supportable decision, even if only to prevent the imposition of additional fees should its decision be reversed on appeal. The statutory scheme, as a whole, promotes fair and impartial administrative adjudications.

¶ 26 Finally, that school board members are elected and therefore accountable to the voters helps to ensure that the board acts impartially, in a way that benefits the entire district and not just one school's administration. *See Rouse,* 156 Ariz. at 373–74, 752 P.2d at 26–27; *see also Hortonville,* 426 U.S. at 495–96, 96 S.Ct. 2308. The public's interest is best served by retaining and supporting qualified teachers, not by arbitrarily firing them.

¶ 27 Against the background presumptions of the constitutionality of statutes, *see Samaritan Health Sys.,* 194 Ariz. at 290 ¶ 21, 981 P.2d at 590 ¶ 21, and the honesty and integrity of decisionmakers, *see Havasu Heights Ranch and Devp. Corp. v. Desert Valley Wood Prods., Inc.,* 167 Ariz. 383, 387, 807 P.2d 1119, 1123 (App.1990) (citing *Withrow,* 421 U.S. at 47, 95 S.Ct. 1456), we do not find supportable the trial court's conclusion that Pavlik has proved that the statute requiring the Board to pay his fees and costs necessarily renders the Board members' interests direct, personal, and substantial. He has not shown that the Board members are actually biased against him or that he has not been accorded due process.

### C. *Placement on Paid Leave*

¶ 28 Having decided that Pavlik did not show actual bias on the part of the Board, we must determine whether the District violated the law by placing Pavlik on administrative leave with pay for thirty days before providing him a statement of charges. The District claims that Pavlik waived this issue by not raising it at the administrative level. *See Rouse,* 156 Ariz. at 371, 752 P.2d at 24 (failure to raise issue in administrative proceeding waives it unless the issue is jurisdictional or is one that the tribunal is incompetent to hear). The District, however, never raised waiver as a defense in the trial court and, in failing to do so, waived its waiver argument. We will consider the matter on the merits.

¶ 29 The trial court believed that by placing Pavlik on paid leave without providing a statement of charges, the District violated A.R.S. section 15–540 (1991), which requires that a written statement of charges be provided to any teacher placed on leave for disciplinary purposes:

> **§ 15–540. Suspension prior to dismissal of a certified teacher; written charges; salary**
>
> **A.** Upon a written statement of charges adopted by the governing board charging a certificated teacher of the school district with cause for suspension without pay or dismissal, the governing board may immediately place the teacher on administrative leave of absence.
>
> **B.** The notice of administrative leave of absence shall be in writing and be served upon the teacher personally or by United States registered mail addressed to the teacher at his last known address.
>
> **C.** Any teacher who is placed on administrative leave of absence pursuant to this section shall continue to be paid regular salary during the period of administrative leave of absence.

¶ 30 The District concedes that the superintendent placed Pavlik on administrative leave before written charges were preferred, but contends that section 15–540 does not apply because Pavlik was put on administrative leave for investigatory, not disciplinary

reasons. The District claims that it has the inherent power to suspend a teacher with pay pending an investigation. As support, it points to the language of subsection C, "any teacher who is placed on administrative leave of absence *pursuant to this section,*" as demonstrating that other forms of administrative leave exist. (Emphasis added).

¶ 31 Pavlik responds by citing A.R.S. section 15–341(A)(25) (1991) (current version at section 15–341(A)(23) (Supp.1998)), which limits the time a teacher may be placed on leave with pay: "Disciplinary action shall not include suspension with pay or suspension without pay for a period of time longer than ten school days."

¶ 32 We agree with the District that neither statute applies because Pavlik's suspension was for investigatory reasons, and not for disciplinary purposes. Although investigation and discipline are often intertwined, some investigations result in exoneration, not discipline.

¶ 33 At oral argument, Pavlik's attorney asserted that the investigation was complete before Pavlik was placed on leave. Although the record does not bear this out, assuming it were the case, administrative leave might still be appropriate to allow the District time to digest the information the investigation revealed and consider what to do about it.

¶ 34 Although no statute or rule expressly authorizes leaves of absence for investigative purposes, we agree with the District that it had the inherent authority to suspend a teacher with pay pending an investigation. An employer may have legitimate reasons to limit the access to a school campus of an employee under suspicion of misconduct involving students. We also recognize that, in some cases, it will benefit the employee to have the investigation proceed without disciplinary charges being preferred. We will not attempt to define in the abstract how long such a suspension may last or what notice to the teacher is required. Pre-termination suspension before a hearing is constitutionally permissible as long as the suspension is with pay. *See Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 544–45, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) ("[I]n those situations where the employer perceives a significant hazard in keeping the employee on the job, it can avoid the problem by suspending with pay.").

¶ 35 We now consider whether Pavlik was prejudiced by the Board's failure to provide him a copy of the charges before placing him on administrative leave. Pavlik asserts that the failure to give him written notice of the charges before placing him on administrative leave irreparably harmed his ability to present a defense. Had a statement of charges been issued, he says, he could have provided "insight into the actual facts." He asserts that he could have begun his own investigation and secured experts to interview the students who had made allegations against him. Exclusion from the investigation, he maintains, enabled the District's administrative staff to present a one-sided version of the facts to the Board and denied him the opportunity to participate in the process before the District decided to terminate him.

¶ 36 As part of his claim, Pavlik also asserts that the assistant principal who investigated the matter exerted undue influence over the student witnesses, improperly used leading questions, and sometimes interviewed the students in groups. He claims that the investigator's unbridled access to the students and her lack of training in investigatory techniques tainted the witnesses.

¶ 37 The record does not show whether Pavlik knew the subject of the investigation, but it also does not reflect that he asked for a reason for his suspension until just before the Board meeting at which his case was to be considered. The record does show, however, that when his lawyer asked for a statement of the charges and a continuance to enable Pavlik to prepare a defense, both requests were promptly granted, and Pavlik was invited to submit a response to the charges. In his response, Pavlik admitted most of the factual allegations, but took the position that they were not serious enough to warrant termination.

¶ 38 At the two-day hearing before the Board, Pavlik confronted and cross examined the witnesses against him, including the per-

son who had investigated the allegations. He presented thirteen witnesses and thirteen exhibits of his own. He never suggested that his ability to present a case had been hampered or constrained, nor did he request a continuance to allow him to present more evidence.

¶ 39 The presence of procedural irregularities does not require setting aside the finding of an administrative board unless a party was prejudiced by the irregularities. *See DeFries v. School Dist. No. 13 of Cochise County,* 116 Ariz. 83, 86, 567 P.2d 1212, 1215 (App.1977); *Barrow v. Arizona Bd. of Regents,* 158 Ariz. 71, 79, 761 P.2d 145, 153 (App.1988). Even assuming that the District should have given Pavlik notice of the accusations as soon as he was placed on administrative leave, we nonetheless conclude that the record does not demonstrate that he was prejudiced by the failure to do so. Several reasons support our conclusion.

¶ 40 First, nothing prevented Pavlik from asking why he was being placed on administrative leave, and nothing kept him from consulting a lawyer as soon as he was placed on leave.

¶ 41 Second, although Pavlik accuses the District's investigator of shaping the evidence against him, he does not dispute most of the evidence and he concedes that any influence by the investigator was unwitting. He points to only one example in the record of the investigator asking leading questions and does not show how the question or the response to it might have harmed him. A review of that item shows that the investigator did ask students whether Pavlik had ever hugged or touched them. But the students' responses, read in their entirety, suggest both spontaneity and restraint on the part of the students. The statements do not suggest that the students felt pressured to respond in a particular way. Pavlik's suggestion that the witnesses were unduly influenced is speculative.

¶ 42 Third, the thrust of Pavlik's defense was that the allegations against him did not warrant termination, not that they were not true. Since Pavlik conceded the facts, we do not see how interviewing the witnesses before they were "tainted" by the District's investigator would have made any difference in the outcome.

¶ 43 As long as Pavlik was afforded due process, defects in proceedings that did not prejudice his rights do not require upsetting the administrative decision. *See Cooner v. Board of Educ.,* 136 Ariz. 11, 17–18, 663 P.2d 1002, 1008–09 (App.1982). Pavlik was provided the opportunity to attack the District's case and to present his own. The trial court abused its discretion in concluding that any irregularity prejudiced Pavlik.

## CONCLUSION

¶ 44 We reverse the trial court's holdings that the Board had a disqualifying pecuniary interest in Mr. Pavlik's termination, that his due process rights were violated when the Board rendered a decision in his case, and that being placed on paid administrative leave without first being provided a copy of the charges against him prejudiced his ability to present his case.

¶ 45 We reverse the judgment of the trial court reinstating Pavlik and remand with instructions to reinstate the decision of the Board.

CONCURRING: SHELDON H. WEISBERG, Presiding Judge.

KLEINSCHMIDT, Judge, dissenting.

¶ 46 I respectfully dissent because, in my opinion, the possibility of having to pay fees and costs to a teacher who prevails in a termination proceeding builds a constitutionally unacceptable bias into the process. I agree with the majority in all other respects.

¶ 47 It is safe to assume that school boards put a priority on their core function of providing the essentials necessary to educate children and that underfunded districts have difficulty in meeting this goal. *See Roosevelt Elem. Sch. Dist. v. Bishop,* 179 Ariz. 233, 877 P.2d 806 (1994). It follows that school boards look with a sharp and disapproving eye on expenditures that do not relate directly to their mission of educating children. In this respect, I would distinguish them from federal agencies, like the one involved in a case the majority cites, *Marshall v. Jerrico,*

**158**

*Inc.,* 446 U.S. 238, 100 S.Ct. 1610, 64 L.Ed.2d 182 (1980). The funding of a large federal agency is probably less restricted and its activities are certainly less subject to local interest and scrutiny than the funding and activities of a school board.

¶ 48 While $12,000, which the majority assumes might be the fees and costs for a case like this one, may be a relatively small sum in terms of the District's budget, in absolute terms, it is still a considerable amount of money. Pavlik, in his response to the brief of *Amici*, points out that $12,000 would represent nearly fifty percent of the District's actual expenditures for the gifted program for grades 9 through 12; twice the amount actually spent for children with orthopedic impairments; more than ½ of the amount budgeted for children with hearing impairments; more than ½ of the amount budgeted for children with multiple disabilities; more than ½ of the amount budgeted for children with visual impairments or pre-school children with speech and language delay; and more than ½ of the amount budgeted for pre-school children with severe developmental delays.

¶ 49 I believe the statutory process for terminating teachers is constitutional, in all respects other than the fee payment provision. Generally, if an unconstitutional provision is removed from the statute and the statute still provides a comprehensive treatment of a particular subject, it is presumed that the legislative intent would be to leave the remaining statute in effect. *Republic Inv. Fund I v. Town of Surprise,* 166 Ariz. 143, 151, 800 P.2d 1251, 1259 (1990). I think the general rule applies here, and I would remand the case for a new hearing. The practical problem of presenting the case to the same board that has already heard the matter can be partially ameliorated by referring the case to a hearing officer as provided for A.R.S. section 15–541, which went into effect after the Board heard this case.