495 P.2d 1315

**MARICOPA COUNTY BOARD OF SUPERVISORS et al., Appellants,**

**v.**

**BELL 5IST INVESTORS et al., Appellees.**

**No. 10766.**

Supreme Court of Arizona,
In Banc.
April 17, 1972.

wide from east to west. In its approximate center is a parcel roughly one mile square, known as Sunburst Farms. Plaintiffs' properties lie within the rectangle but to the north and south of Sunburst Farms.

At the time of the commencement of this action and for many years prior thereto, the entire two-square-mile rectangle was zoned RI–8, which means that in the event the property is subdivided, each lot must contain at least 8,000 square feet (five lots to the acre).

Sunburst Farms is neither a farm nor a group of farms. It is a residential development whose occupants desire country living with all that the term connotes—large lots, wide open spaces, bucolic surroundings, birds, horses, dogs and other animals on the premises, etc. The residents of that area are nature lovers. They like, and want to continue to enjoy, their low-density housing in which their lots are one acre or larger in size. They refer to this way of living as their "life style"

Plaintiffs, whose lands border on Sunburst Farms, have no objections to these large one-acre country estates, but they intend to develop, or sell for development, their own properties for use as homesites of only ⅙ acre each. Some of their properties have already been sold or optioned, and hundreds of homes will soon spring up on them.

At the time this litigation was commenced, the City of Phoenix intended to annex all of the property involved.

The residents of the Sunburst Farms area fear that if they are ringed by high-density subdivisions having lots with areas of only 8,000 square feet, those who buy and move into houses built on such lots will soon begin to complain about the noises, odors, flies, etc., that are the inevitable concomitant of nearby livestock, birds and pets. It is feared that the complaints will be followed by restrictions, lawsuits, injunctions, and a general erosion of their life style already established. It is the belief of the Sunburst Farms residents that the prevention of such an eventuality re-

Samuel Kelsall, IV, Art Van Haren, Jr., Phoenix, for appellants.

Jennings, Strouss & Salmon by Jon L. Kyl, Burch, Cracchiolo, Levie, Guyer & Weyl by C. Michael Pierce, Albert B. Spector, Phoenix, for appellees.

HAYS, Chief Justice.

This action concerns a parcel of land in Maricopa County, between the city limits of Phoenix and Glendale. It is two miles long from north to south, and one mile

quires a "buffer zone" immediately to the north and to the south of their properties so that high-density zoned properties will be separated from Sunburst Farms by a sufficient distance to insure the perpetuation of its life style.

To create such a buffer zone, the Sunburst Farms residents are not trying to prevent plaintiffs from changing to higher-density zoning; they are trying to force upon plaintiffs a zoning density lower than that which was in effect when they bought their lands, and which is still in effect.

The residents of Sunburst Farms were unable to get the required 51% of the property-owners to join in an application for the rezoning of the entire two-square-mile rectangle, so they persuaded the County Planning and Zoning Commission to introduce a request for a zoning change, to RI–35, which would make the minimum lot·size 35,000 square feet (one to an acre). The request appears in the record as "Case Number Z 70–131," and shows on its face that it is a commission-initiated request.

A.R.S. § 11–829 provides that zoning changes may be made only by the County Board of Supervisors. If the application is made by one or more landowners, the Board must refer it to the Zoning Commission for its recommendation; if the application is on the Commission's own initiative, that constitutes the recommendation. *However, the Board of Supervisors has no authority to make zoning changes which are neither initiated nor recommended by the Commission.*

■ The law contemplates that before initiating or recommending a zoning change, the Commission shall hold public meetings at which property-owners may express their views on the proposed change. In the instant case, a hearing was held and plaintiffs vigorously objected to having their property zoned RI–35. They felt that raising the minimum size of the lots· on their property would make housing developments impossible and would thus diminish the value of their lands. They also felt that the residents· of Sunburst Farms· had no right of any kind to force owners of the surrounding lands to change their zoning for the benefit of the Sunburst Farms residents who just as vigorously supported the proposed change.

The meeting was continued to a later date. The Commission's original proposal to rezone the entire two-square-mile tract was amended by eliminating the plaintiffs' properties and others, and it then applied only to Sunburst Farms. A new hearing was held on the amended proposal. At this hearing, plaintiffs, noting that their lands were not affected, favored the amended proposal, while the Sunburst Farms residents opposed the change because it did not include plaintiffs' lands. The Commission forwarded the amended proposal to the Board of Supervisors with its recommendation for passage.

At the meeting of the Board of Supervisors, after all parties were permitted to express their views, one supervisor disqualified himself from voting because of a conflict of interest. The other two then voted to rezone to RI–35 the entire two square miles· including the lands of the plaintiffs.

■ In the event of consummation of the annexation of the land by the City of Phoenix, all of the land would automatically carry over its changed zoning classification and, thereafter, in any proceedings to return plaintiffs' lands to their former zoning classification, the burden would be on the plaintiffs. For this reason, plaintiffs commenced this special action against the Board of Supervisors, its clerk, and the County Manager, to prevent them from putting the changes into effect by altering the county zoning map. Sunburst Farms Homeowners Association intervened.

The trial court, on plaintiffs' motion for summary judgment, held that the Board's action was valid only as to the Sunburst Farms property and that the plaintiffs' properties remained RI–8. An appeal was taken to the Court of Appeals by both the County Board of Supervisors and the Sun-

burst Farms Homeowners. The appeal was transferred to this court by our order.

A great many issues are raised by the parties in their briefs, the principal one of which is that the superior court erred in granting summary judgment because there were several disputed issues of fact. The correctness of this abstract statement of the law is too well settled to require citation of authority. Here, the appellants dispute by affidavits that plaintiffs' diagram, showing the ownership of the tracts involved, is correct, alleging that some plaintiffs who claim to be owners are merely option-holders. They dispute that the transcripts of the hearings before the County Planning and Zoning Commission are complete. They dispute the statement of the plaintiffs to the effect that the County has no overall comprehensive zoning plan. They dispute that notice to plaintiffs of the hearings was sufficient. Appellants also complain that plaintiffs' affidavit accompanying their motion for summary judgment was mostly hearsay and insufficient to support a summary judgment

▪ All of these matters, however, are immaterial in our view of the issue before us. There is no genuine dispute that there was no recommendation before the Board of Supervisors with reference to the plaintiffs' lands. If a private landowner's application for change of zoning reaches the County Board, it may not be acted upon without first being sent to the Zoning Commission for its recommendation. If the Board of Supervisors receives an application initiated by the Zoning Commission itself, that is considered to carry the Commission's recommendation. In either procedure, the Board may choose to disregard the recommendation of the Commission and act adversely to it. However, there is no provision enabling the Board to act on, or initiate its own zoning changes without first obtaining the views of the Planning and Zoning Commission. *Without either a positive or negative recommendation by the Commission, the Board has no jurisdiction to act.* If the Commission forwards a recommended change on parcel A which it has itself initiated, the Board cannot use it as a vehicle to make changes as to parcel B merely because the latter borders on the former. This principle goes directly to the Board's jurisdiction.

"The board of supervisors can exercise no powers except those specifically granted by the statute, and in no other way than that fixed by the statute. . . . And where any other method than that prescribed is followed, such acts are without jurisdiction and wholly void." Board of Control of the State of Arizona v. Buckstegge, 18 Ariz. 277, 158 P. 837.

Exactly in point is the case of Manning v. Reilly, 2 Ariz.App. 310, 408 P.2d 414; the only difference being that *Manning* involved the city council, while the instant case concerns the County Board of Supervisors. In *Manning*, the city zoning commission held a public hearing on an application to rezone certain land which included the plaintiffs' land; it then submitted to the city council its recommendation. Plaintiffs' land was specifically excluded from recommendation of the commission, which advised that further hearings would be held regarding the excluded land, and a recommendation would come forward later. The city council held a hearing and rezoned the entire parcel including plaintiffs' land. In a suit to set aside that part of the zoning ordinance which included plaintiffs' lands, the Court of Appeals granted that relief, saying:

"The requirements for enacting a zoning ordinance applicable to appellees' property were not complied with. Notwithstanding the City's prerogative to disregard the report which is advisory in nature, it could not proceed without receipt of a final report containing *zoning recommendations.*

. . . . . .

'A preliminary consideration of a proposed change in a zoning ordinance by a competent body of disinterested persons is not a mere formality but an

essential and important prerequisite to official action affecting the value and use of the private property. The power to ordain city zoning ordinances, and to amend, supplement, or change them, is not a mere perquisite attaching to the offices of the mayor and councilmen or city commissioners, to be granted or withheld at their grace or caprice. The Legislature devised what is considered an effective barrier against such a possibility when it provided that zoning matters should first be considered by an impartial body of resident taxpayers chosen for that purpose, created regularly by ordinance pursuant to the pertinent statute, or by reference of proposed zoning changes to a special committee or commission. Not otherwise did the Legislature sanction the power of enacting or amending ordinances pertaining to the zoning of the city. . . .'

"A report which in haec verba excluded appellees' property from the recommendations therein contained did not fulfill the statutory requisites. The zoning ordinance enacted by the City Council therefore could not apply to appellees' land, and the trial court properly so held." 2 Ariz.App. 313, 408 P.2d 417.

We, ourselves, in Hart v. Bayless Inv. & Trading Co., 86 Ariz. 379, 390, 346 P.2d 1101, said:

"Zoning ordinances, being in derogation of common law property rights, will be strictly construed. . . ."

 It is true that the appellants *claim* that it is a disputed question of fact whether the zoning commission deleted plaintiffs' properties from the commission-initiated petition to rezone. Appellants make this claim in the memorandum attached to the "Response to Plaintiffs' Motion for Summary Judgment". This memorandum is not evidence and is not under oath. In the only two affidavits filed by appellants, we are unable to find any denial of this fact. On the other hand, plaintiffs alleged in paragraph 5 of their complaint that the county zoning commission recommended rezoning of only the area occupied by Sunburst Farms and "made no recommendation for rezoning the remainder of the land described in the original application. . . ." The complaint was verified. The answers of both defendants and intervenors admit the allegations of paragraph 5 of the complaint. *Since there is no disputed question of fact with regard to the lack of any recommendation of the zoning commission concerning the properties of the plaintiffs, the motion for summary judgment was properly entertained.*

The motion was not only properly entertained but was also properly granted, since the Board of Supervisors acted beyond its jurisdiction in rezoning land which had not first received from the zoning commission a recommendation for or against the proposed rezoning.

Affirmed.

CAMERON, V. C. J., and STRUCKMEYER, LOCKWOOD and HOLOHAN, JJ., concur.