IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| EMMETT McLOUGHLIN REALTY, INC.; QUIK-MART STORES, INC.; DOUGLAS S. HOLSCLAW, JR.; ANNE T. HOLSCLAW; TOOPS FAMILY LIMITED PARTNERSHIP; RIGGS FAMILY TRUST; LYNN GREER TRUST; and JULIE GREER TRUST, | ) ) ) ) ) ) ) ) ) | 2 CA-CV 2005-0073 DEPARTMENT A  O P I N I O N |
| Plaintiffs/Appellants, | ) ) | |
| v. | ) ) | |
| PIMA COUNTY, ARIZONA; and MEMBERS OF THE BOARD OF SUPERVISORS OF PIMA COUNTY, ARIZONA, | ) ) ) ) ) | |
| Defendants/Appellees. | ) ) ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. C20003514

Honorable Carmine Cornelio, Judge

AFFIRMED

Law Office of Jeffrey M. Neff
  By Jeffrey M. Neff and Gabrielle A. Shinohara            Tucson
Attorneys for Plaintiffs/Appellants

Barbara LaWall, Pima County Attorney
  By Paul A. Loucks            Tucson
Attorneys for Defendants/Appellees

H O W A R D, Presiding Judge.

**¶1**     In this challenge to appellee Pima County's zoning actions concerning certain real property, appellants Emmett McLoughlin Realty, Inc., and others[1] (collectively, McLoughlin) appeal from summary judgment granted in favor of Pima County. McLoughlin argues the trial court erred by rejecting its claims that Pima County had violated its constitutional due process rights, violated the notice and hearing provisions in A.R.S. § 11-829(C) and Pima County Code (P.C.C.) § 18.91.060(B)(1), and acted without jurisdiction in violation of § 11-829 and P.C.C. § 18.91.030(A)(2).  Finding the trial court did not err in granting Pima County judgment on McLoughlin's claims, we affirm.

**¶2**     We review a grant of summary judgment de novo.  *Strojnik v. Gen. Ins. Co. of Am.*, 201 Ariz. 430, ¶ 10, 36 P.3d 1200, 1203 (App. 2001).  A motion for summary judgment should be granted if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Ariz. R. Civ. P. 56(c)(1), 16 A.R.S., Pt. 2; *see also Orme Sch. v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990).  We view the facts in the light most favorable to the party against whom summary judgment was entered.  *Link v. Pima County*, 193 Ariz. 336, ¶ 12, 972 P.2d 669, 673 (App. 1998).

---

[1]Appellants include Emmett McLoughlin Realty, Inc.; Quik-Mart Stores, Inc.; Douglas S. Holsclaw, Jr.; Anne T. Holsclaw; Toops Family Limited Partnership; Riggs Family Trust; Lynn Greer Trust; and Julie Greer Trust.

**¶3**　　　　This appeal concerns three parcels of real estate, totaling approximately thirty-two acres, each of which is owned by separate individuals or entities. Prior to actions that led to this litigation, Parcels A and C were zoned suburban ranch, and Parcel B was zoned local business. In 1999, parties interested in purchasing Parcel A applied to the County for a conditional use permit to construct and operate a charter school on that parcel. A hearing administrator approved the application, but several neighboring property owners appealed this decision to the Pima County Board of Supervisors. The appeal on Parcel A was scheduled to be heard by the Board at a public meeting on July 13, 1999. Around the same time as the conditional use permit for Parcel A was being processed, the owner of Parcel C filed an application requesting the parcel be rezoned from suburban ranch to major resort for use as a resort and conference center.

**¶4**　　　　Before the hearing on the appeal concerning Parcel A occurred, a neighborhood action group submitted a report to Pima County Supervisor Raul Grijalva, proposing downzoning Parcel B from local business to suburban ranch and objecting to any commercial development on Parcels A and C. Grijalva subsequently caused an agenda item to be added to the Board's regular meeting on July 6, 1999, to allow the action group to present its report to the Board. At the meeting, the action group presented the contents of its report, and the Board directed County staff to initiate the process of downzoning Parcel B from local business to suburban ranch. Although Grijalva made that motion and the Board unanimously passed it, he also noted the matter would first have to go through

3

planning and zoning procedures and during that process various legal issues would have to be addressed.

¶5        One week later, the Board held the public hearing on the appeal concerning the conditional use permit for Parcel A. This hearing was preceded by publication in a newspaper of general circulation in the county seat and personal notice to the appellants who own the property. At that hearing, several speakers referred to the events that had occurred at the July 6 Board meeting. The Board voted to deny the application for the conditional use permit for Parcel A by a vote of three to two.

¶6        On March 29, 2000, the Pima County Planning and Zoning Commission held separate public hearings on whether to downzone Parcel B and to rezone Parcel C. Both hearings were preceded by publication in a newspaper of general circulation in the county seat, posting notice on the subject properties along the public right of way, and personal notice to the appellants who own the property. The Commission subsequently voted to recommend that the Board not downzone Parcel B to a combination of suburban ranch and single residence. The Commission also issued a report recommending that the Board deny the owner's application to rezone Parcel C from suburban ranch to major resort.

¶7        In April, the Board held a public hearing concerning the rezoning of Parcel B and, despite the Commission's recommendation, voted to downzone that parcel. Two months later, the Board held a public hearing on the application to rezone Parcel C from suburban ranch to major resort and, in accordance with the Commission's recommendation, voted to deny the rezoning request. Each of these public hearings was preceded by

4

publication in a newspaper of general circulation in the county seat and personal notice to the appellants who own the property.

¶8 McLoughlin sued Pima County and its Board of Supervisors, arguing the County had violated the due process rights of the owners of each of the three parcels because of the lack of notice of the Board's July 6 meeting and the bias of a Commission member. McLoughlin also argued the county had violated certain statutory notice provisions relating to the July 6 meeting and the Board had exceeded its authority when it initiated the rezoning of Parcel B. McLoughlin further alleged the Board's actions on Parcel B violated a statute in effect at that time, A.R.S. § 11-829(F), which required the express written consent of a property owner before a property could be downzoned.

¶9 The trial court entered partial summary judgment in favor of Pima County, declaring the statute's requirement of owner consent unconstitutional, and we affirmed that decision on appeal. *Emmett McLoughlin Realty, Inc. v. Pima County*, 203 Ariz. 557, 58 P.3d 39 (App. 2002). On remand, McLoughlin moved for summary judgment on the remaining issues, and Pima County cross-moved for summary judgment. The trial court granted Pima County's motion and entered judgment in its favor. McLoughlin now appeals to this court.

## VIOLATION OF STATUTORY NOTICE PROVISIONS

¶10 McLoughlin argues that Pima County violated the notice provisions of A.R.S. § 11-829 and P.C.C. § 18.91.060(B)(1) by failing to give McLoughlin personal notice of the

5

Board's July 6 meeting.[2]  And McLoughlin argues that, because the results of the July 6 meeting affected Parcels A and C as well as Parcel B, the zoning decision on all three parcels must be declared void.

**¶11**　　　　Section 11-829(C) governs the procedures and notice requirements the County must follow when addressing an application to amend or change a zoning regulation.  This statute provides that, after the Board receives an application, it must submit the application to the Commission for a report.  *See also* A.R.S. § 11-806(A).  Before the Commission reports to the Board, the Commission must hold at least one public hearing "after giving at least fifteen days' notice thereof by one publication in a newspaper of general circulation in the county seat and by posting of the area included in the proposed change."  § 11-829(C).  In proceedings involving rezoning, the Commission must also give notice by first class mail to each owner of the property to be rezoned and to all property owners within three hundred feet of the property.  § 11-829(C)(1).  If anyone objects to the Commission's recommendation or requests a public hearing by the Board, the Board must hold a hearing and give at least fifteen days' notice of this hearing.  § 11-829(D).

**¶12**　　　　Likewise, the Pima County Code provides that, fifteen days prior to any public hearing before the Commission, the County must give notice by publication in a newspaper of general circulation and post notice on the property or area to be considered at the hearing.

---

[2]We address McLoughlin's statutory argument first because, if it is correct, it would obviate the need to reach the constitutional issues he raises. *Little v. All Phoenix S. Cmty. Mental Health Ctr., Inc.*, 186 Ariz. 97, 101, 919 P.2d 1368, 1372 (App. 1995) ("Courts should decide cases on nonconstitutional grounds if possible, avoiding resolution of constitutional issues.").

P.C.C. § 18.91.060(B)(1)(a)-(b). And, when the hearing involves an issue of rezoning, the County must also notify by first class mail all property owners within three hundred feet of the property sought to be rezoned. P.C.C. § 18.91.060(B)(1)(c). These same notice and hearing requirements also apply to a public hearing held by the Board of Supervisors. P.C.C. § 18.91.060(B)(2). The notice requirements in the Code are additional to those requirements mandated by statute. *See Pima County v. Clapp*, 23 Ariz. App. 86, 90, 530 P.2d 1119, 1123 (1975).

**¶13** McLoughlin acknowledges it received notice of all public hearings that occurred in the formal zoning process relating to the properties. However, McLoughlin asserts that, because the action taken at the Board's July 6 general meeting ultimately affected Parcel B as well as the other parcels, the July 6 meeting was not simply a general meeting of the Board, but instead, amounted to the first hearing on the rezoning of the property. As a result, McLoughlin argues it was entitled to personal notice of this meeting pursuant to § 11-829(C) and P.C.C. § 18.91.060.[3]

**¶14** But, under Arizona's statutory rezoning scheme, the Board's July 6 meeting could not have affected any of the three parcels at issue. When the Board receives an application for rezoning, it must refer the application to the Commission for its recommendation. § 11-829(C); *Maricopa County Bd. of Supervisors v. Bell 51st Investors*, 108 Ariz. 261, 263, 495 P.2d 1315, 1317 (1972). And, although the Board may choose to

---

[3]McLoughlin relies on § 11-829(C)(2), which applies when the Commission changes "the standards governing land uses," but that did not occur here.

7

disregard the Commission's recommendation, as it ultimately did with respect to Parcel B, the Board has no jurisdiction to act until it receives this recommendation. *Bell 51st Investors*, 108 Ariz. at 264, 495 P.2d at 1318 ("Without either a positive or negative recommendation by the Commission, the Board has no jurisdiction to act.") (emphasis deleted). In this case, the Commission had not acted prior to the Board's July 6 meeting. Therefore, as a matter of law, the Board could not have affected the zoning of any of these parcels at its July 6 meeting. And the statutory scheme is very clear that the first rezoning hearing is the first hearing before the Commission.

**¶15**     Furthermore, as noted earlier, the record reflects Supervisor Grijalva specifically acknowledged at the July 6 meeting that legal issues and other factors would have to be considered during the rezoning process. And the vote on July 13 to deny the conditional use permit on Parcel A was split three to two. Accordingly, the record does not support McLoughlin's assertion that the Board made the actual zoning decision concerning its property at the July 6 meeting. That meeting, therefore, was not, as a matter of law or fact, the first meeting on the rezoning of McLoughlin's property. And neither the statute nor the Code required personal notice to McLoughlin of the general meeting before the Board. *See* A.R.S. § 38-431.02.[4] Accordingly, the trial court did not err when it determined that Pima County did not violate the notice provisions of either the Arizona statutes or the Pima County Code.

---

[4]McLoughlin does not argue that Pima County failed to comply with the notice requirements of § 38-431.02.

8

**CONSTITUTIONAL DUE PROCESS**

**A. Notice of July 6, 1999, meeting**

¶16        McLoughlin argues that Pima County denied each of the owners due process afforded by the United States and Arizona Constitutions when it failed to give the owners personal notice of the Board's July 6 meeting, which McLoughlin claims was a "pivotal proceeding leading to a diminution of [his] property rights."[5]  We review constitutional claims de novo. *Webb v. State ex rel. Ariz. Bd. of Med. Exam'rs*, 202 Ariz. 555, ¶ 7, 48 P.3d 505, 507 (App. 2002).

¶17        The United States and Arizona Constitutions prohibit the state from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. Amend. XIV; *see also* Ariz. Const. art. II, § 4. Due process requires, in part, that a party receive adequate notice and have the opportunity to be heard at a meaningful time and in a meaningful manner. *See Hall v. Lalli*, 194 Ariz. 54, ¶ 6, 977 P.2d 776, 779 (1999); *Comeau v. Ariz. State Bd. of Dental Exam'rs*, 196 Ariz. 102, ¶ 20, 993 P.2d 1066, 1070-71 (App. 1999); *see also In re Hamm*, 211 Ariz. 458, ¶ 42, 123 P.3d 652, 662 (2005).

¶18        In determining whether due process requirements apply to a particular process, courts look at the nature of the proceeding. *See Berenter v. Gallinger*, 173 Ariz. 75, 82, 839 P.2d 1120, 1127 (App. 1992). The passage of a zoning ordinance is the exercise of a legislative function and, thus, is generally not subject to full constitutional due process

---

[5]Because we reject McLoughlin's arguments concerning Parcel B, we need not address whether the July 6 meeting was also the "pivotal point" in the rezoning process of Parcels A and C.

requirements, including personal notice. *See Wait v. City of Scottsdale*, 127 Ariz. 107, 108, 618 P.2d 601, 602 (1980); *see also Hart v. Bayless Inv. & Trading Co.*, 86 Ariz. 379, 389, 346 P.2d 1101, 1108-09 (1959). This so-called legislative act doctrine applies not only to the passage of an original zoning ordinance but also to all zoning ordinances passed by a board of supervisors, including those resolving applications for rezoning a particular piece of property. *See Wait*, 127 Ariz. at 108, 618 P.2d at 602; *see also Melhorn v. Pima County*, 194 Ariz. 140, ¶ 4, 978 P.2d 117, 118 (App. 1998) ("[A]mendment of zoning ordinances is an exclusively legislative function."). Based on Arizona law concerning the legislative act doctrine, McLoughlin was not entitled to personal notice in these zoning decisions.

¶19        McLoughlin argues, however, that the legislative act doctrine does not apply to the present case, relying on *Harris v. County of Riverside*, 904 F.2d 497 (9th Cir. 1990). In *Harris*, the county amended its general plan and, in doing so, rezoned Harris's property from business to residential. *Id*. at 499. Although the county had posted the required notice of hearing as mandated by the rezoning statute, Harris neither received personal notice nor knew of the proceedings until after his property had been rezoned. *Id*. The Ninth Circuit found that, because the county's rezoning of Harris's land was distinct from the amendment of the general plan and affected a relatively small number of property owners, the decision implicated due process concerns. *Id*. at 502. Based on these considerations, the court held that "'land use planning decisions less extensive than general rezoning c[an] not be insulated from notice and hearing requirements by application of the "legislative act" doctrine.'" *Id.,*

10

*quoting Horn v. County of Ventura*, 596 P.2d 1134, 1138 (Cal. 1979) (alteration in *Harris*).

¶20 McLoughlin argues, notwithstanding any Arizona law to the contrary, that *Harris* is binding on this court by virtue of the Supremacy Clause of the United States Constitution. *See* U.S. Const. art. VI, cl. 2. But we need not decide whether *Harris* could apply to some rezoning cases because it is distinguishable from this case for at least two reasons. First, *Harris* determined that the actual rezoning of the property required due process protection and did not extend due process protection to preliminary, "pivotal proceedings." 904 F.2d at 505-06. And, as we have previously noted, the Board had no jurisdiction as a matter of law to rezone the parcels at the July 6 meeting. *See Bell 51st Investors*, 108 Ariz. at 264, 495 P.2d at 1318. Therefore, the Board could not have rezoned McLoughlin's property at the July 6 meeting. Accordingly, we find *Harris* factually distinguishable from this case.

¶21 Second, in *Harris*, the county downzoned Harris's property as part of an amendment to its general plan without giving him any personal notice. Here, McLoughlin and the other appellant property owners received proper notice and were allowed to participate in each and every hearing in the actual rezoning proceedings concerning their particular parcels in accordance with the statutory scheme. Accordingly, *Harris* does not apply, and McLoughlin's due process rights, if any, were not violated.

¶22 McLoughlin seeks to avoid these defects in its argument by contending, in effect, that the July 6 vote resulted in a de facto rezoning of the three parcels. But it has not

directed us to any cases recognizing de facto rezoning and imposing due process requirements. The case on which it relies, *Herrington v. County of Sonoma*, 834 F.2d 1488 (9th Cir. 1988), did not involve a de facto rezoning. In that case, the Ninth Circuit determined that the county had violated the plaintiffs' due process rights when, inter alia, it downzoned the plaintiffs' property without giving them notice of the final hearing. *Id*. at 1492-94. *Herrington*, just as *Harris*, involved actual, not de facto, rezoning. And, again, in this case, Supervisor Grijalva specifically acknowledged at the July 6 meeting that legal issues and other factors would have to be considered during the rezoning process. Finally, as noted above, the Board vote on July 13 to deny the conditional use permit on Parcel A was three to two. Therefore, no de facto rezoning of any of the parcels occurred at the July 6 meeting.

## B. Bias of Commission member

¶23        McLoughlin also argues that Pima County violated its due process right to a fair and impartial hearing when Pima County allowed William Staples, a Pima County employee, to participate in the Commission's proceedings on Parcel B. McLoughlin contends that Staples's employment with Pima County biased him in favor of the County and that this bias materially affected the outcome of the hearing. We review this issue de novo. *Webb*, 202 Ariz. 555, ¶ 7, 48 P.3d at 507.

¶24        Due process requires a "'fair trial in a fair tribunal.'" *United States v. Superior Court*, 144 Ariz. 265, 280, 697 P.2d 658, 673 (1985), *quoting In re Murchison*, 349 U.S. 133, 136, 75 S. Ct. 623, 625, 99 L. Ed. 942, 946 (1955). All decision makers,

12

judges and administrative tribunals alike, are entitled to a presumption of "honesty and integrity." *Pavlik v. Chinle Unified Sch. Dist. No. 24*, 195 Ariz. 148, ¶ 24, 985 P.2d 633, 639 (App. 1999). To rebut this presumption, the challenging party must show actual bias; mere speculation about bias is not sufficient. *See id.* ¶¶ 24, 27.

¶25    A party challenging the presumption of a Commission member's impartiality could demonstrate the required actual bias by showing a violation of the statutes on conflicts of interest, A.R.S. §§ 38-501 through 38-519. In particular, § 38-503(B) requires that "[a]ny public officer or employee who has . . . a substantial interest in any decision of a public agency shall make known such interest in the official records of such public agency and shall refrain from participating in any manner as an officer or employee in such decision." In this case, Staples was a "public officer" as defined in § 38-502(8). The term "substantial interest" is defined as "any pecuniary or proprietary interest, either direct or indirect, other than a remote interest." § 38-502(11); *see also Hughes v. Jorgenson*, 203 Ariz. 71, ¶ 8, 50 P.3d 821, 823 (2002).

¶26    McLoughlin has not argued and did not present any evidence showing that Staples had "any pecuniary or proprietary interest" in the outcome of the rezoning proposal of Parcel B. *See Shepherd v. Platt*, 177 Ariz. 63, 65, 865 P.2d 107, 109 (App. 1993) ("Pecuniary means money and proprietary means ownership."). And any loyalty that Staples might have had toward his employer can be characterized as "general sympathy, feeling, or bias," which is insufficient to constitute a substantial interest. *Yetman v. Naumann*, 16 Ariz. App. 314, 317, 492 P.2d 1252, 1255 (1972). Thus, McLoughlin did

13

not show that Staples had a conflict of interest as defined in § 38-502 and did not overcome the presumption that Staples was unbiased. *See Pavlik*, 195 Ariz. 148, ¶ 24, 985 P.2d at 639. Accordingly, the trial court did not err when it determined that Staples's participation in the Commission hearing did not violate McLoughlin's right to due process.

¶27 Furthermore, we cannot accept McLoughlin's assertion that Staples's participation was important to the final outcome of the rezoning proceeding and prejudiced McLoughlin. At the Commission meeting on March 25, 2000, a Commission member moved that its recommendation on the proposal to downzone Parcel B be the action it had taken on December 29, 1999—that a decision be continued for eight months. Staples offered a substitute motion to recommend approval of the downzoning. The Commission rejected the substitute motion, by a vote of six to two, with Staples voting in favor of it. The Commission then voted on the original motion—whether to delay the vote for eight months—which failed by a four-four vote.

¶28 Another Commission member moved to recommend that the Board deny the proposal to downzone Parcel B. A second member made a substitute motion to delay a recommendation for four months so this court could rule on the constitutionality of A.R.S. § 11-829(F). Staples voted against the substitute motion, which failed by a four-four vote. The Commission then voted on the motion to recommend that the Board deny the proposal to downzone Parcel B. Staples voted against the motion, which passed by a six-two vote. The Commission subsequently recommended that the Board deny the proposal to downzone Parcel B.

¶29 McLoughlin argues that, had Staples recused himself from the proceedings, the motion to delay voting on a recommendation would have passed four-three, and the recommendation would not have been sent to the Board at that time. As a result, McLoughlin argues, Staples's actions had a "decisive effect" on the proceedings, which resulted in due process violations against McLoughlin.

¶30 But the only decisive effect Staples had on the proceedings was to allow the Commission to vote on the proposal to downzone Parcel B. And, despite Staples's vote to the contrary, the Commission found in favor of McLoughlin and voted to recommend denying the downzoning. McLoughlin has not explained how it would have benefited from a delay or even if such a delay would have changed the final outcome. Thus, we agree with the trial court that Staples's participation in the proceedings was immaterial to the final outcome.

## JURISDICTION OF THE BOARD TO REZONE PARCEL B

¶31 McLoughlin alternatively argues that the Board of Supervisors lacked jurisdiction to rezone Parcel B. Specifically, McLoughlin argues that the Board failed to follow the proper procedures when, at its July 6 meeting, it initiated the downzoning of Parcel B without first receiving a recommendation from the Commission.

¶32 But McLoughlin appears to misconstrue the procedures for rezoning in A.R.S. § 11-829 and the Pima County Code. According to relevant provisions, an application for rezoning may be made by the owner of the subject property, the owner's agent, or the County upon initiation by the Commission. § 11-829(A); P.C.C. § 18.91.030. After the

15

application is submitted, the Commission must hold at least one public hearing before voting on whether to recommend that the Board accept the proposal. § 11-829(C); P.C.C. §§ 18.91.030 and 18.91.040. Only after the Board receives this recommendation does it have jurisdiction to vote on the actual proposal. *Bell 51st Investors*, 108 Ariz. at 263, 495 P.2d at 1317. It therefore appears McLoughlin is attempting to make two arguments: 1) the Board usurped the authority of the Commission by initiating the downzoning application on its own, and 2) the Board did not receive a recommendation from the Commission before voting on the final proposal.

¶33        Separating these two theories, we first address whether the Board usurped the authority of the Commission when it initiated the downzoning of Parcel B. In presenting this argument, McLoughlin correctly notes that only the owner of the subject property, the owner's agent, or the Commission can initiate a rezoning process. *See* § 11-829(A) and (E); P.C.C. § 18.91.030. McLoughlin then argues that, because the Board initiated the downzoning, it usurped the authority of the Commission. But the Board did not initiate the proceedings; instead, it directed its staff to request that the Commission initiate the rezoning proceedings. Nothing in the zoning statutes prohibits the Board from making such a request; in fact, A.R.S. § 11-806(A) specifically authorizes the Board to request from the Commission "a report or recommendation in connection with any matter relating to the development of the county." We therefore conclude that the Board had authority to request the Commission to begin a rezoning process on Parcel B. Furthermore, once the Commission did so, any alleged error in the Board's initial action became irrelevant to the

16

rezoning proceedings because the Commission indisputably had authority to begin the rezoning.

¶34 McLoughlin also appears to argue that the Board did not have jurisdiction to rezone Parcel B because it did not first obtain a recommendation from the Commission as required by § 11-829. But, again, this argument is based on the premise that the Board rezoned the property at the July 6 meeting, an argument we have rejected as unsupported both factually and legally. And the undisputed facts show that the Commission did send a recommendation to the Board before the actual rezoning was approved in April 2000. We therefore find this argument without merit.

## CONCLUSION

¶35 In rezoning McLoughlin's real property, Pima County complied with the notice and hearing provisions as well as the jurisdictional requirements in § 11-829 and P.C.C. §§ 18.91.030 and 18.91.060. Because the Board did not rezone McLoughlin's real property at the July 6 meeting, full constitutional due process concerns did not attach to the Board's actions, and McLoughlin was not entitled to personal notice of that meeting. And, because Commissioner Staples did not have a substantial interest in the rezoning of Parcel B, his participation in the Commission hearing did not violate McLoughlin's right to a fair and impartial hearing. We therefore affirm the trial court's grant of summary judgment in favor of Pima County.

_____
JOSEPH W. HOWARD, Presiding Judge

CONCURRING:

17

_____
JOHN PELANDER, Chief Judge


_____
J. WILLIAM BRAMMER, JR., Judge

18