304 P.3d 1126

**ALPHA, LLC dba Alpha Towing; Tanner Enterprises, LLC dba Towing Services, Automotive Services, Plaintiffs/Appellants,**

v.

**Jeff DARTT, Deputy Camp Verde Marshal; Earl J. Huff, Lieutenant Camp Verde Marshal; David R. Smith, Camp Verde Marshal; Town of Camp Verde, Arizona, Defendants/Appellees.**

No. 1 CA–CV 12–0361.

Court of Appeals of Arizona,
Division 1, Department D.

June 27, 2013.

Law Offices of Stephen H. Schwartz By Stephen H. Schwartz, Sedona, Attorney for Plaintiffs/Appellants.

Murphy Schmitt Hathaway & Wilson By Milton W. Hathaway, Jr., Andrew J. Becke, Prescott, Attorneys for Defendants/Appellees.

## OPINION

DOWNIE, Judge.

¶ 1 The issue in this appeal is whether the appellant towing businesses have a property interest in remaining on a towing rotation list created and administered by a municipal police agency. Because there is no underlying legislative enactment, and the regulations governing the list are modifiable at the administrator's discretion, no constitutionally protected property interest exists. We therefore affirm the grant of summary judg-

ment to appellees Jeff Dartt, Deputy Camp Verde Marshal; Earl J. Huff, Lieutenant Camp Verde Marshal; David R. Smith, Camp Verde Marshal; and the Town of Camp Verde (collectively, "Camp Verde" or "Town").

## FACTS AND PROCEDURAL HISTORY

¶ 2 The Camp Verde Marshal's Office ("CVMO") is responsible for obtaining the towing of abandoned, damaged, or illegally parked vehicles within Town limits.[1] In 1995, the CVMO created a document titled, "Towing Regulations Camp Verde Marshal's Office." The regulations explained at the outset:

> This manual standardizes the procedures and policies governing the tow truck operations servicing the Camp Verde Marshal's Office (CVMO).
>
> —General requirements for operators;
>
> —Towing practices;
>
> —Miscellaneous policies; and
>
> —A complaint review system for sanctions
>
> This manual applies only to CVMO rotation lists and does not apply or control any activities except for the administration of the rotation lists.
>
> The CVMO reserves the right to elect to replace a rotation list with contract towing at any time.
>
> The guidelines in this manual are subject to modification by the Marshal. Any changes to the manual shall be made in writing.

¶ 3 The CVMO established a list of towing companies that would be contacted on a rotating basis for service calls. The towing regulations permit any business satisfying the stated criteria to appear on the rotation list unless towing contracts are in effect.

¶ 4 Alpha L.L.C., dba Alpha Towing ("Alpha") and Tanner Enterprises, L.L.C., dba Towing Services, Automotive Services ("Tanner") are separate corporate entities with common ownership. Tanner was placed on the CVMO's tow rotation list in 2003. Alpha

---

1. The Town Marshal is the "administrative head of the police department." Camp Verde Town Code ("Town Code") § 3–2–4(B).

was already on the list in 2004, when Tanner's principals acquired Alpha's assets.

¶ 5 The Camp Verde Town Council passed Resolution 96–337 ("Resolution") in January 1996. The Resolution reads, in pertinent part:

WHEREAS, the Town of Camp Verde, a municipal corporation ("Town"), may pursuant to ARS 28–1007.E, enter into contractual agreements with any towing firm or firms for towing or storage services, or both, if such firms are duly licensed and approved by the Arizona Department of Transportation, and

WHEREAS, the Town, rather than enter into competitive bidding and formal agreements has elected to establish Towing Regulations which allow all qualified firms to be called for towing operations as long as they show they are licensed, insured, have an established performance and safety record, as set forth in the Regulations,

NOW THEREFORE THE MAYOR AND THE COMMON COUNCIL OF THE TOWN OF CAMP VERDE ADOPT THE "TOWING REGULATIONS, CAMP VERDE MARSHAL'S OFFICE," DATED DECEMBER 1, 1995.

¶ 6 In 2006, the CVMO amended the towing regulations to, inter alia, delete the detailed explanations of violations and sanctions that appeared in the 1995 version. The 2006 version of the regulations states that the CVMO will "take each complaint of a violation on a case-by-case basis." Instead of the prior point-based system for specifically-enumerated violations, sanctions under the 2006 version are more generic and "include a letter of concern up to and including removal from the tow list." The Town Council took no action regarding the 2006 version of the regulations.

¶ 7 Towing companies on the rotation list at the time of the 2006 revisions received letters advising them of the changes and enclosing copies of the amended regulations. Businesses desiring to remain on the rotation list were required to submit new applications. Alpha and Tanner did so.

¶ 8 In September 2007, Alpha received correspondence from the CVMO advising of a citizen's complaint, which the CVMO characterized as "very poor customer service and [bordering on] criminal violations." The letter noted that Alpha had been "warned for the same behavior" and concluded:

[D]ue to these ongoing complaints and for violation of the towing regulations, your company will be removed from our towing list indefinitely. This removal also affects the parent company Automotive Services.

¶ 9 After their removal from the rotation list, Tanner and Alpha (hereafter, collectively referred to as "Tanner") filed the instant litigation. They alleged that the Town had violated their constitutional due process and equal protection rights.[2]

¶ 10 Tanner and the Town filed competing motions for partial summary judgment. The superior court granted the Town's motion and denied Tanner's. The parties thereafter stipulated to the dismissal of Tanner's remaining claims. Tanner timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12–2101(A)(1). We review the grant of summary judgment de novo. See Emmett McLoughlin Realty, Inc. v. Pima County, 212 Ariz. 351, 353, ¶ 2, 132 P.3d 290, 292 (App.2006) (citation omitted).

## DISCUSSION

¶ 11 In analyzing Tanner's due process claims, the threshold inquiry is whether a constitutionally protected property interest exists. See Shelby Sch. v. Ariz. State Bd. of Educ., 192 Ariz. 156, 168, ¶ 55, 962 P.2d 230, 242 (App.1998) ("Due process protection vests only when a person has a property interest that is protectible."). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Bd. of Regents of State Coll. v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); see also Shelby Sch., 192 Ariz. at 168, ¶ 55, 962 P.2d at 242 ("Property rights

2. Tanner also asserted other claims against the      Town, but they are not at issue in this appeal.

do not arise from simple wants and desires; they must be based on legitimate claims of entitlement.").

¶ 12 Protected property interests are not created by the Constitution, but are "defined by existing rules or understandings that stem from an independent source such as state law." *Roth,* 408 U.S. at 577, 92 S.Ct. 2701. Such interests attain constitutional status "by virtue of the fact that they have been initially recognized and protected by state law." *Paul v. Davis,* 424 U.S. 693, 710, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). A cause of action arises when, "as a result of the state action complained of, a right or status previously recognized by state law was distinctly altered or extinguished." *Id.* at 711, 96 S.Ct. 1155.

¶ 13 The superior court ruled that Tanner derived no constitutionally protected property interest from the 1995 towing regulations or the Resolution. We agree. The former fit within the definition of a municipal regulation as "a rule prescribed by a municipality ... for the conduct of third persons dealing with it." 5 McQuillin, The Law of Municipal Corporations § 15.8 (3d ed. 2004); *see also Fort Bend County Wrecker Ass'n v. Wright,* 39 S.W.3d 421, 426 (Tex.App.2001) ("By definition, a departmental policy designed to refer business to a particular set of tow companies is not a law, regulation, or a provision having the force and effect of law."). The regulations, by their terms, are those of the CVMO and are designed for third party towing businesses "servicing" that office. The rotation list is referred to as the *CVMO's* list in the regulations.[3]

¶ 14 It is also significant that the Town Council acted by resolution rather than by ordinance. "There is a definite distinction between an ordinance and a resolution of a governing body of a municipality." *Mitchell v. City of Parshall,* 108 N.W.2d 12, 14 (N.D.

1961); *see also* McQuillin § 15.8 ("[A]n ordinance differs fundamentally from a resolution or other form of expression or action of a municipal legislative body...."). As the North Dakota Supreme Court explained in *Mitchell:*

> The term "resolution" as applied to the act of an official body such as a city council ... ordinarily denotes something less solemn or formal than the term "ordinance," and, generally speaking, is simply an expression of the opinion or mind of the official body concerning some particular item of business or matter of administration coming within its official cognizance.
>
> . . . .
>
> A "resolution" is not a law or an ordinance, but merely the form in which a legislative body expresses a determination or directs a particular action. An "ordinance" prescribes a permanent rule for conduct of government, while a "resolution" is of a special or temporary character.

108 N.W.2d at 14.

¶ 15 The Town Code itself distinguishes between resolutions and ordinances, setting heightened procedural and substantive requirements for the latter. *See* Town Code § 2–4–1 through 2–4–4. For example, § 2–4–4, entitled, "Requirements for an Ordinance," states:

> Each ordinance shall have one subject only, the nature of which is clearly expressed in the title. Whenever possible, each ordinance shall be introduced as an amendment to this code or to an existing ordinance and, in such case, the title of the sections to be amended shall be included in the ordinance.

Nothing in the record, including the agenda for and minutes from the Town Council meeting at which the Resolution was passed, reflects compliance with the procedural standards for an ordinance or an intent to amend

---

**3.** Tanner relies heavily on one federal district court opinion finding a protected property interest arising from towing regulations adopted by the Tennessee Commissioner of Safety. *See Gregg v. Lawson,* 732 F.Supp. 849 (E.D.Tenn. 1989). There is no indication that the Tennessee Commissioner had the authority to modify the regulations at issue in that case. But to the extent the decision stands for the proposition that the regulations, standing alone, gave rise to a constitutionally protected property interest without further state action, we disagree and instead adopt the view of the majority of jurisdictions addressing the issue, as discussed *infra* in ¶¶ 17 and 18.

the Town Code. Moreover, if the towing regulations carried the force of law, the CVMO would have no ability to modify them—a result inconsistent with the Town Council's approval of the regulations' express grant of that authority to the CVMO.

¶ 16 The label given an action (e.g., "regulation," "resolution," or "ordinance") is not dispositive. We must instead examine the character and effect of the municipality's action to ascertain its true legal status. In the case at bar, the Resolution did not amend the Town Code or establish a permanent rule. Rather, it adopted current operational policies for the CVMO that were subject to modification at the CVMO's discretion. *See, e.g., Namur v. Habitat Co.*, 294 Ill.App.3d 1007, 229 Ill.Dec. 309, 691 N.E.2d 782, 786 (Ill.App.1998) ("an ordinance is a legislative act and is the equivalent of a municipal statute"); Black's Law Dictionary (6th ed. 1097) (defining "ordinance" as "a local law of a municipal corporation, duly enacted by the proper authorities, prescribing general, uniform and permanent rules of conduct"); *cf. Piecknick v. Pennsylvania*, 36 F.3d 1250, 1259 (3d Cir.1994) (detailed police guidelines were regulations without force of law, and plaintiff could not "point to any other governing state law or regulation that creates a federally protected property interest guaranteeing it the right to provide towing services"). The Resolution was not a legislative act with the force of law.[4]

¶ 17 Cases that have recognized a property interest in towing rotation lists involve underlying legislative enactments not present here. *See, e.g., Abercrombie v. City of Catoosa*, 896 F.2d 1228, 1231–32 (10th Cir.1990) (relying on Oklahoma statutory requirement that cities call local wreckers "on an equal basis as nearly as possible"); *Pritchett v. Alford*, 973 F.2d 307, 310 (4th Cir.1992) (finding property interest based on highway department regulations promulgated pursuant to state statute that required tow rotation lists to be administered "fairly and in a manner designed to ensure that all wrecker services on the list have an equal opportunity to

the towing business arising from the rotation list"). No comparable Arizona statute or state administrative regulation exists regarding the establishment, administration, or maintenance of towing rotation lists.

¶ 18 Our conclusion that Tanner has no protected property interest is supported by decisions from other jurisdictions. In *Morley's Auto Body, Inc. v. Hunter*, 70 F.3d 1209 (11th Cir.1995), the Eleventh Circuit surveyed appellate cases involving wrecker rotation policies and concluded:

> Where a court has found a property interest in remaining on a rotation list, the plaintiff has alleged a claim of entitlement supported or created by a formal and settled source such as a state statute or regulatory scheme. Absent such an entitlement grounded in state law, courts have not found a protected property interest in remaining on a wrecker rotation list.

*Id.* at 1215; *see also Pete's Towing Co. v. City of Tampa*, 648 F.Supp.2d 1276, 1288 (M.D.Fla.2009) (despite detailed police regulations for tow rotation system, plaintiff lacked property interest because rules were not "codified in a state statute or regulation").

¶ 19 We also agree with the superior court's observation that, even if the Resolution constituted "sufficient state action," Tanner would nevertheless lack a protected property interest. The towing regulations were modifiable at the CVMO's discretion, and the rotation list could be abandoned entirely in favor of contract towing. "The term 'property' in the context of a due process inquiry does not refer to concessions or privileges that a state controls and may bestow or withhold at will." *Shelby Sch.*, 192 Ariz. at 168, ¶ 55, 962 P.2d at 242; *see also Doyle v. City of Medford*, 606 F.3d 667, 672 (9th Cir.2010) ("A regulation granting broad discretion to a decision-maker does not create a property interest.").

¶ 20 By adopting the Resolution, the Town Council granted the CVMO the authority to modify the towing regulations and to replace the rotation list with contract towing "at any

---

4. Based on our conclusion about the legal stature of the Resolution, we need not address the Town's contention that "any property interest

must be firmly grounded in state, not municipal, law."

time." *See, e.g.,* A.R.S. § 9–223(G) ("The marshal shall be ex officio street commissioner, and as such shall perform such service and duty *as may be imposed upon him by resolution* or ordinance of the board.") (emphasis added). The CVMO thus had the power to modify the 1995 towing regulations. Tanner applied for inclusion on the rotation list after the 2006 regulations were issued and was subject to those regulations at the time of its removal. We therefore need not address Tanner's assertion that it had a "mutually explicit understanding" it would not be removed from the rotation list unless procedures set forth in the 1995 regulations were followed.

¶ 21 Contrary to Tanner's contention, the superior court did not improperly rely on A.R.S. § 9–834 in reaching its decision. The court discussed § 9–834 to illustrate how this case is distinguishable from *Wedges/Ledges of California, Inc. v. City of Phoenix,* 24 F.3d 56 (9th Cir.1994). *Wedges/Ledges* involved gaming licenses subject to both state statutory requirements and a city ordinance, leading the Ninth Circuit to the unsurprising conclusion that the plaintiffs possessed a cognizable property interest in their existing licenses and in obtaining licenses for new games. 24 F.3d at 62–64.

¶ 22 Tanner, on the other hand, was not stripped of any government-issued license. *Compare Webb v. State ex rel. Ariz. Bd. of Med. Exam'rs,* 202 Ariz. 555, 558, ¶ 8, 48 P.3d 505, 508 (App.2002) (recognizing property interest in State-issued medical license), *and Johnson v. Mofford,* 181 Ariz. 301, 303, 890 P.2d 76, 78 (App.1995) (State employee who, by statute, could only be discharged for cause, "was vested with a property right in his employment that could not be taken without due process"), *with Paczosa v. Cartwright Elem. Sch. Dist. No. 83,* 222 Ariz. 73, 80, ¶¶ 33–37, 213 P.3d 222, 229 (App.2009) (because Arizona law does not give school

administrators a property interest in continued employment, no due process protections exist). Moreover, removing Tanner from the rotation list did not prevent it from continuing to operate as a towing business. *See, e.g., Bernard v. United Township High Sch. Dist. No. 30,* 5 F.3d 1090, 1092 (7th Cir.1993) ("It is the liberty to pursue a calling or occupation, and not the right to a specific job, that is secured by the Fourteenth Amendment.").

¶ 23 Tanner had nothing more than a unilateral expectation or hope it would remain on the Town's towing rotation list and that such a list would continue in existence. *See Roth,* 408 U.S. at 577, 92 S.Ct. 2701. Because Tanner lacked a constitutionally protected interest, both its procedural and substantive due process claims were properly dismissed. *See Aegis of Ariz., L.L.C. v. Town of Marana,* 206 Ariz. 557, 568, ¶ 44, 81 P.3d 1016, 1027 (App.2003) (threshold requirement for procedural and substantive due process claims is "the plaintiff's showing of a liberty or property interest protected by the Constitution").

## CONCLUSION[5]

¶ 24 For the reasons stated, we affirm the judgment of the superior court. We deny Tanner's request for attorneys' fees because it is not the prevailing party.

CONCURRING: ANDREW W. GOULD, Presiding Judge and PATRICIA A. OROZCO, Judge.

---

5. Tanner makes no independent argument regarding its equal protection claim, so we do not address it. *See Schabel v. Deer Valley Unified Sch. Dist. No. 97,* 186 Ariz. 161, 167, 920 P.2d 41, 47 (App.1996) (issues not clearly raised and argued in a party's appellate brief are waived);

*MT Builders, L.L.C. v. Fisher Roofing, Inc.,* 219 Ariz. 297, 304 n. 7, ¶ 19, 197 P.3d 758, 765 n.7 (App. 2008) (arguments not developed on appeal are waived). Moreover, Tanner conceded in the superior court that if it lacked a cognizable property interest, "all of [its] claims fail."