NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

RICARDO R., *Appellant*,

*v.*

LORI C., D.R., M.R., *Appellees*.

No. 1 CA-JV 18-0034
FILED 10-11-2018

---

Appeal from the Superior Court in Maricopa County
No. JS17374
The Honorable Glenn A. Allen, Judge *Pro Tempore*

**AFFIRMED**

---

COUNSEL

Ricardo Ramirez, Florence
*Appellant*

Walston Law Group, Mesa
By J. Robert Walston
*Counsel for Appellee Lori C.*

---

**MEMORANDUM DECISION**

Judge Peter B. Swann delivered the decision of the court, in which Presiding Judge Kenton D. Jones and Judge David D. Weinzweig joined.

---

**S W A N N**, Judge:

**¶1**          Ricardo R. ("Father") appeals the juvenile court's order severing his parental rights based on the nature and length of his felony sentences under A.R.S. § 8-533(B)(4).  We affirm for the reasons set forth below.

## FACTS AND PROCEDURAL HISTORY

**¶2**          Father and Lori C. ("Mother") are the parents of five children, two of whom, D.R. and M.R., were minors at the time of the severance order.

**¶3**          Father was convicted in 2011 of multiple counts of child molestation and sexual conduct with a minor related to his repeated abuse of daughter J.M. when she was between 12 and 16 years old.  The court sentenced him to life in prison.  We affirmed his convictions on direct appeal in 2012.

**¶4**          Meanwhile, Mother divorced Father and obtained sole physical custody and legal decision-making.  The court granted Father supervised parenting time conditioned on the outcome of the children's mental-health evaluations and permission from Father's parole officer, and granted Father telephone contact with the children conditioned on the terms of his incarceration.  The children never completed a mental-health evaluation, and Mother decided not to place the children on Father's approved contact list at the Arizona Department of Corrections ("ADOC").  ADOC enforced Mother's choice and prohibited Father from having telephonic contact with the children.  Consistent with A.R.S. § 13-4411.01, ADOC also did not allow Father to write letters to the children.  Despite those restrictions, Father exchanged some letters with D.R. and M.R. and spoke with them via telephone on a few occasions.

**¶5**          Father never moved to modify the legal decision-making and parenting time orders, but in 2016 sought to enforce his parenting time and requested a contempt finding against Mother.  The court denied both of Father's requests.

**¶6**          Mother thereafter successfully petitioned the juvenile court to sever Father's parental rights.  Father appeals the severance order.

**DISCUSSION**

¶7        Father asserts six errors.  He contends: (1) the commissioner presiding over the severance hearing did not have authority to hear the case; (2) the statute governing severance, A.R.S. § 8-533(B), is unconstitutional; (3) Father's wrists were improperly restrained during the hearing; (4) the court erred by not pursuing Father's claims that Mother committed a crime; (5) insufficient evidence supports the severance order; and (6) the commissioner was biased.  We reject each of Father's contentions.

I.        COMMISSIONER ALLEN HAD AUTHORITY TO HEAR FATHER'S SEVERANCE MATTER.

¶8        We first address Father's contention that Commissioner Allen did not have authority to preside over the severance hearing.  The argument lacks merit.  We take judicial notice of orders appointing Commissioner Allen to serve as a judge pro tempore to the Arizona Superior Court in Maricopa County between July 1, 2016 and June 30, 2018.  *See In re Sabino R.*, 198 Ariz. 424, 425, ¶ 4 (App. 2000).  Under the orders published by the Supreme Court, Commissioner Allen had authority under those appointments to hear and decide the severance matter.  *See* A.R.S. § 12-144.

II.       FATHER FAILS TO SHOW HOW A.R.S. § 8-533(B) IS UNCONSTITUTIONAL.

¶9        We next address Father's contention that A.R.S. § 8-533(B) is unconstitutional because applying a "preponderance of the evidence" standard to a best-interests determination violates his due process rights.

¶10       Father cites *Santosky v. Kramer*, 455 U.S. 745 (1982), to support his argument.  In *Santosky*, the United States Supreme Court held that before terminating parental rights, states must prove "parental unfitness" by clear and convincing evidence.  *Id.* at 760, 769.  The Arizona Supreme Court has interpreted *Santosky*'s holding as applying only to the statutory ground for termination.  *Kent K. v. Bobby M.*, 210 Ariz. 279, 285–86, ¶¶ 28, 30–32 (2005).  *Kent K.* expressly holds that the superior court need only determine the child's best interests by a preponderance of the evidence.  210 Ariz. at 288, ¶ 42.  In this manner, the supreme court has authoritatively harmonized *Santosky* with Arizona law.  We have neither the power nor a reasoned basis to depart from the supreme court's holding.

III.   FATHER FAILS TO SHOW HOW THE ALLEGED FAILURE TO REMOVE HIS WRIST RESTRAINTS CONSTITUTED REVERSIBLE ERROR.

¶11        We next address Father's contention that the court erred by deferring to officers who did not remove his wrist restraints for the severance hearing.

¶12        The transcript of the hearing reflects only the following exchange:

> [Father's counsel]:  Judge, . . . [m]y client's asking that the handcuffs be removed so that he can write notes to assist me during the course of this proceeding.
>
> The Court:  And I -- all right.  So go ahead.

It is unclear whether Father's characterization of subsequent events is accurate.  But even assuming that Father is correct that the restraints were not actually removed, he fails to show how those optics constituted error.

¶13        In *criminal* cases, "generally, a defendant has the right to appear *before the jury* free of shackles or other restraints."  *Wilson v. McCarthy*, 770 F.2d 1482, 1484 (9th Cir. 1985) (emphasis added); *see also State v. Benson*, 232 Ariz. 452, 461, ¶ 29 (2013) ("Although a defendant generally has the right to be free from restrains in the courtroom, the court may order their use if, in the court's discretion, the restraints are needed for courtroom security and safety.").  That rule evolved because of the public nature of criminal proceedings and the prejudicial effect restraints might have on a jury. *See Holbrook v. Flynn*, 475 U.S. 560, 568 (1986) ("Not only is it possible that the sight of shackles and gags might have a significant effect on the jury's feelings about the defendant, but the use of this technique is itself something of an affront to the very dignity and decorum of judicial proceedings that the judge is seeking to uphold." (citation omitted)).  But even in criminal trials defendants may be restrained without error if the restraints are not visible to the jury. *See State v. McMurtrey*, 136 Ariz. 93, 98 (1983) ("An appellate court will not find error on the ground that the defendant was shackled unless it is shown that the jury saw the shackles.").

¶14        Father presents no authority or argument regarding the above-described rule's applicability in severance proceedings, in which a judge, not a jury, functions as the fact-finder.  Without a jury, prejudice cannot be presumed. *See Cardoso v. Soldo*, 230 Ariz. 614, 619–20, ¶ 19 (App. 2012) ("A trial judge is presumed to be free of bias and prejudice . . . .");

*Fuentes v. Fuentes*, 209 Ariz. 51, 58 (App. 2004) ("[T]rial judges are presumed to know the law and to apply it in making their decisions." (citation omitted)). The juvenile court had discretion to control the courtroom and the proceedings, and Father has not adequately demonstrated how his claimed inability to take notes resulted in a miscarriage of justice or an unfair trial. *See Christy A. v. Ariz. Dep't of Econ. Sec.*, 217 Ariz. 299, 308, ¶ 31 (App. 2007).

IV.     FATHER FAILS TO SHOW HOW HE IS ENTITLED TO RELIEF FOR THE COURT'S INACTION AGAINST MOTHER.

¶15         We next address Father's contention that the court was obligated to refer Mother for criminal prosecution for extortion because she admitted under oath to telling the children's paternal relatives that they would not be allowed to see the children unless Father agreed to a certain distribution of marital assets in the divorce case. Father also cites his own testimony that Mother had offered to permit him and the children's paternal relatives to visit the children if he gave her money and dropped all appeals in the criminal case.

¶16         Father fails to show how the foregoing is germane to our review of alleged error committed within the course of the severance hearing. Parenting time, grandparent visitation, and the distribution of marital assets are not questions properly at issue in juvenile severance cases. *See* A.R.S. §§ 25-403 (governing allocation of parenting time in family-court proceedings), -409(C)(3) (governing grandparent visitation in family-court proceedings), -318(A) (governing disposition of property in dissolution proceedings). Further, Father's reliance on Ariz. R. Crim. P. 2.3 and 2.4 is misplaced. Those rules address only the procedure relating to the initiation of a formal criminal complaint; they do not establish in the court a duty to refer alleged crimes. *See* Ariz. R. Crim. P. 2.3, 2.4. Moreover, the court's inaction is simply not appealable as a final order from a juvenile severance matter. *See In re Pima Cty. Juv. Action No. S-933*, 135 Ariz. 278, 280 (1982) ("The right to appeal exists only from a final order.").

V.     REASONABLE EVIDENCE SUPPORTS THE SEVERANCE ORDER.

¶17         We next address Father's contention that insufficient evidence supports the severance order.

¶18         To sever parental rights, the juvenile court must find by clear and convincing evidence at least one statutory ground articulated in A.R.S. § 8–533(B) and must find by a preponderance of the evidence that termination is in the child's best interests. *Kent K.*, 210 Ariz. at 288, ¶ 41;

*Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000).  Because the juvenile court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts," we will affirm a severance order so long as it is supported by reasonable evidence.  *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009).

        A.     Reasonable Evidence Supports Severance Under A.R.S. § 8-533(B)(4).

**¶19**      The court may terminate parental rights under A.R.S. § 8-533(B)(4) if "the parent is deprived of civil liberties due to the conviction of a felony . . . if [his] sentence . . . is of such length that the child will be deprived of a normal home for a period of years."[1]  In determining whether the evidence meets this ground, the court must consider all relevant factors, including:

> (1) the length and strength of any parent-child relationship existing when incarceration began, (2) the degree to which the parent-child relationship can be continued and nurtured during the incarceration, (3) the age of the child and the relationship between the child's age and the likelihood that incarceration will deprive the child of a normal home, (4) the length of the sentence, (5) the availability of another parent to provide a normal home life, and (6) the effect of the deprivation of a parental presence on the child at issue.

*Michael J.*, 196 Ariz. at 251–52, ¶ 29.  "[T]here is no threshold level under each individual factor . . . that either compels, or forbids, severance.  It is an individualized, fact-specific inquiry."  *Christy C. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 445, 450, ¶ 15 (App. 2007).  The juvenile court made findings with

---

[1]     Section 8-533(B)(4) also provides that the court may terminate parental rights if "the parent is deprived of civil liberties due to the conviction of a felony if the felony of which that parent was convicted is of such nature as to prove the unfitness of that parent to have future custody and control of the child."  Because we conclude that severance was warranted under the statute's length-of-sentence provision, we need not address the juvenile court's holding that severance was warranted based on the nature of Father's convictions as well.  *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 3 ("If clear and convincing evidence supports any one of the statutory grounds on which the juvenile court ordered severance, we need not address claims pertaining to the other grounds.").

respect to each of the factors set forth above. Reasonable evidence supports the findings, and we discern no abuse of discretion in the weight the court assigned them.

¶20 First, the court found that, though "[t]he family appeared to have a solid relationship prior to the felony charges filed against the father," because Father abused his oldest daughter "it's not clear exactly how stable the home was in reality to the picture painted at trial."

¶21 The court next found that the parent-child relationship could not be continued or nurtured during Father's incarceration, and that they had already been deprived of a normal home life in view of the fact that Father had been incarcerated for much of their almost-concluded childhood. Father had been incarcerated with almost no involvement in the children's lives for approximately eight years. And though Father contends that Mother prevented contact, he acknowledged at the hearing that his sentences prevented him from ever again being fully involved in the children's lives. Further, by the time of the hearing, the children had refused contact with him and desired severance. Father asserts that "the children can and do change their minds" about having contact with him. He points to an interview in which M.R. stated that she wanted visits with him. That interview occurred in the family court matter in 2016, one and a half years before the severance hearing. The juvenile court was in the best position to reconcile any conflicts in the evidence.

¶22 Regarding the length of Father's sentences, the court found that "[h]e will never be released from prison." Father was convicted of multiple felonies and ultimately sentenced to life in prison.[2] Even so, Father contends that the court's finding is incorrect because his petition for review under Ariz. R. Crim. P. 32 was pending at the time of the severance hearing.[3]

¶23 The court finally found that Mother was providing the children with a normal home life, and that they were thriving under her

---

[2] Father contends that, though the court listed one of Father's convictions as failing to register as a sex offender, he was never charged with that offense. Nonetheless, Father's multiple convictions for child molestation and sexual conduct with a minor resulted in a life sentence and support the court's finding.

[3] This court ultimately denied Father relief under his petition, and the supreme court denied his petition for review.

care despite Father's absence. The evidence established that the children attended school and participated in church activities, and that Mother had provided them counseling to process, among other things, the trauma Father caused the family. Mother provided for the children's physical, medical, emotional, financial, educational, and social needs, and Father was not financially supporting them (except through garnishment of his annuity, payments from which Mother had ceased receiving by the time of the severance hearing).

¶24 On this record, reasonable evidence supports the court's conclusion that severance was warranted under A.R.S. § 8-533(B)(4).

> B. Reasonable Evidence Supports Severance Based on the Children's Best Interests.

¶25 In assessing whether severance would be in a child's best interests, the court must determine how the child would benefit from severance or be harmed by the continuation of the parental relationship. *Alma S. v. Dep't of Child Safety*, 799 Ariz. Adv. Rep. 27, 30, ¶ 13 (Sept. 14, 2018). Moreover, we presume in the best-interests inquiry that the interests of the parent and child diverge because the court has already found the existence of one of the statutory grounds for termination by clear and convincing evidence. *Id.* at ¶ 12.

¶26 Here, the court found that continuing the parent-child relationship would be detrimental to the children for many reasons:

- "The children are aware that the father is serving a life sentence for molesting their older sibling over a number of years."

- "[F]ather's egregious conduct against the children's sibling has traumatized the family and the children. . . . [F]ather's conduct has devastated this family. The children have been to counseling to help them deal with the trauma that [F]ather has inflicted upon them."

- Though "a parent that is incarcerated can still provide emotional support for their children," the children have expressed that "[a]ny contact with [F]ather . . . [is something] they do not want" and that "they want the termination to occur," and Father "conceded that he has had no meaningful contact with the children since he was arrested in 2008."

- "[F]ather has shown by his conduct he's willing to victimize his children over a prolonged period [of] time . . . ."

Each of the findings is supported by reasonable evidence in the record, and the findings are more than sufficient to support the court's determination that continuation of the parental relationship would jeopardize the children's safety and emotional well-being.

## VI.    FATHER FAILS TO SHOW THAT THE COURT WAS BIASED.

**¶27**        Father finally contends that the juvenile court "showed bias in favor of" Mother.  He contends that bias can be gleaned from the court's failure to refer Mother for prosecution and from its unsupported factual findings.  Because we have deemed each of those arguments meritless, *see supra* Sections IV–V, we conclude that Father has failed to show any bias. *See Cardoso*, 230 Ariz. at 619–20, ¶ 19 ("A trial judge is presumed to be free of bias and prejudice and to overcome this presumption, a party must show by a preponderance of the evidence that the trial judge was, in fact, biased."); *Emmett McLoughlin Realty, Inc. v. Pima Cty.*, 212 Ariz. 351, 357, ¶ 24 (App. 2006) ("[M]ere speculation about bias is not sufficient.").

**CONCLUSION**

**¶28**        For the foregoing reasons, we affirm.

**¶29**        Mother requests attorney's fees and costs on appeal "due to Father's unreasonable positions taken throughout the course of this litigation" and his "failure to follow the rules for filing an appeal."  We deny Mother's request.  She cites only to ARCAP 21, which is a procedural rule that creates no substantive basis for a fee award.  *See* ARCAP 21(a)(2). Moreover, ARCAP 21 is not among those rules expressly incorporated by Ariz. R.P. Juv. Ct. 103(G).

